S. C. CLAUSEN v. L. J. AND P. G. TJERNAGEL, Appellants.

Practice: Admissibility of Evidence.  Where a director in a corporation testifies that he does not know the value of the corporation's plant, his testimony that it had no value is inadmissible, and the error in admitting it is not cured because he says, on cross-examination, that it was worth not to exceed twelve or fifteen thousand dollars.

Issue of Good Faith: WHAT ADMISSIBLE ON.  Where it is claimed that defendant misrepresented the value of property sold by him, he may show, as bearing on his good faith, what he invested in it.

*Appeal from Story District Court.*—HON. S. M. WEAVER, Judge.

TUESDAY, MAY 22, 1894.

THE defendants were the owners of the property which became the capital stock of the Scandia Publishing Company, incorporated in Iowa with a cap-

ital stock of fifty thousand dollars, divided into shares, of ten dollars each, with its place of business at Story City, Iowa. The company became incorporated in March, 1891, and in June thereafter, the defendants; sold to the plaintiff twenty-five shares of the stock of the corporation for its par value, two hundred and fifty dollars, which plaintiff has fully paid up. This, action is brought to recover the amount thus paid, under averments that the purchase was made upon representations that the capital stock of the company. was of par value, and would pay a good dividend, and that the representations were fraudulently made. It is further averred that the company was incorporated with a view to cheat and defraud plaintiff and others to whom the stock should be sold, and that the stock was of but little or no value when sold to the plaintiff. The. answer puts in issue the facts pleaded as to the fraud, and upon the trial there was a verdict and judgment for plaintiff, from which defendants appealed. *Reversed.*

*J. F. Martin* for appellants.

*D. J. Vinje* and *J. F. Meeker* for appellee.

GRANGER, C. J.—Complaint is made of the admission of evidence, and to a proper understanding of the questions presented, it will be well to have in mind that the right of recovery depends entirely on the fact of fraudulent representations as to the value of the stock of the corporation, which fixed the value of the stock sold to the plaintiff. The court gave the measure of damage as "the difference between the fair market value which such shares would have had if the representations complained of had been true and the actual market value thereof in the light of the truth concerning the matters so falsely represented." The plant constituting a part, if not all, of the capital of the

corporation, had been owned by the defendants in Minneapolis, Minnesota, and for a bonus of two thousand dollars from the citizens of Story City and vicinity—mainly of the same nationality as the defendants (Scandinavians)—it was removed to Story City, after which the corporation was organized, and one of the defendants made president, and the other treasurer, of it. The items constituting the capital stock are numerous, and embrace many classes of property that might come within the scope of a general printing business, such as newspaper publications, book printing and binding, job printing, etc.

The witnesses upon the question of the value of the outfit at the time of the sale of the stock differ widely as to the value, some placing the value at fifty thousand dollars, and others at from twelve thousand dollars to fifteen thousand dollars, and one or more at nothing. S. S. Larson was a witness for the plaintiff on the question of the value of the stock, and testified on the direct examination as follows: "I am a farmer. I was one of the directors of this company since it was incorporated. While I was a director, there was a list made out of the property of this company by the secretary, and sworn to by him, and someone said that Tjernagel helped him to make it out; and I think the assets amounted to twenty-nine or thirty thousand dollars, and the liabilities of the company at that time was something over one thousand dollars. I can't say how much was due the company on the subscription list and upon the accounts for work done at that time, because I don't remember of looking that up. Q. Have you some knowledge of this property that was enlisted? A. I don't think I would have. Q. Do you know what would be its value? A. No, sir; I don't think I would. Q. State to the jury what the market value of twenty-five shares of the capital stock of this

Scandia Printing Company would be worth in the market to a person who knew just the assets of the corporation and just the condition of the corporation at that time. (Objected to by the defendants as incompetent, irrelevant, and immaterial, and for the further reason that the witness has not shown himself to be competent to testify, and shows by his answer that he has no such knowledge.) *Q. By the court:* State the simple market value of this property at that time. *A.* Taking into consideration and knowledge of the condition, I would not consider it any value. No, sir; of no value." The admission of this testimony was certainly error. It is true that the witness was for a time a director in the corporation, but that did not qualify him to testify as to facts of which he had no knowledge. The testimony was not in the nature of admissions of the defendant. Larson was the plaintiff's witness, with a direct adverse interest to the defendants, he having a like suit pending against them. It is thought that because, on cross-examination, his statements were modified, so that the value was fixed at not to exceed twelve or fifteen thousand dollars, the error is without prejudice; but not so. The entire testimony was against defendants' claim, and all improper. The cross-examination was incidental to the direct.

II. L. J. Tjernagel was a witness for the defendants, and the following questions were asked him: "How much money was invested by you and others in the purchase of printing material and machinery to establish the business? State whether or not you put in twenty-three thousand dollars to purchase property and machinery to establish the present plant." An objection to each of the questions was sustained, on the ground that it was incompetent and immaterial. We think that it was both

competent and material to show by defendants or other witnesses the amount invested in the plant. The thought of the court likely was that the cost was immaterial, inasmuch as the damage was the difference between the actual and the represented value at the time the stock was sold; but the testimony was of value for another purpose. There could be no recovery unless the representations as to value were intentionally false. It seems to us that it was proper to show the amount invested in the plant as bearing on the question of the defendants' good faith in making the representations as to value. This case is a good illustration of the effect of personal interests in forming conclusions as to values, for the witnesses vary in their estimates of the value of this plant so much that it is fixed at twelve thousand dollars and then fifty thousand dollars, and this difference of opinion is seemingly to be largely accounted for because of different interests, inducing different beliefs. It can not properly be said that a man's estimate of the value of his property is not to be affected by what it has cost him. In many cases, where property is bought on the market, the cost will fix the actual value. Time and conditions might, of course, effect changes, and all these are to be considered in fixing the intent in making representations as to value. We are clearly of the opinion that the defendant should have been permitted to show the cost of the property constituting the capital stock of the corporation. We do not find it important to consider other questions, in view of a new trial, and the judgment will stand REVERSED.