## Grant Thornburg v. C. D. Doolittle, Appellant.

**Abstracts of title:** AGREEMENT TO FURNISH SAME: PEFORMANCE.
1　Where abstracts of title were furnished the purchasers of property, taken possession of by them, and were under their charge for a part of the time, and nearly three years after the contract of sale the purchasers exchanged the property purchased for other property, there was an acceptance of the title furnished and a sufficient compliance with the contract to furnish abstracts.

**Mines and mining:** CONTRACT OF SALE: RECOVERY OF PURCHASE PRICE:
2　TENDER. In this action plaintiff contracted to sell defendants and others certain mining properties which he agreed to convey to a named corporation, and in consideration the second parties agreed to pay one-half of the capital stock of the corporation, partly in cash and the balance within a specified time, which each of the second parties bound themselves to pay in proportion to the stock subscribed for by them. The contract also fixed the capital stock of the corporation and provided that a portion of the same should be treasury stock and should be contributed to by the parties equally, the remaining stock to be deposited in a bank, and any portion of the shares belonging to the second parties were to be delivered to the directors of the corporation upon payment of a certain price per share, which should be applied on the amount due plaintiff so far as necessary to discharge their obligation to him. The agreement also provided that if any of the second parties failed to discharge their obligation due plaintiff the directors of the corporation should sell enough of their shares to make up the deficit. *Held,* that as the provision for issuance and distribution of the stock, in addition to procuring funds to operate the mines by the sale of treasury stock, was to secure the deferred payments owing plaintiff, the second parties were not entitled to their share of the stock deposited in the bank until their respective portion of the debt due plaintiff was paid; and that in this action against one of the second parties to recover his share of the deferred payments a tender of the stock was not necessary to enable plaintiff to recover.

**Same:** CONSIDERATION. The consideration for the obligation due plain-
3　tiff in this action was the conveyance of the property to the corporation, and not the issuance of the stock as provided in the contract.

**Same:** ABSTRACT OF TITLE: EVIDENCE OF DEFECTS.  As plaintiff's contract obligated him to deliver abstracts of title to the property to the corporation he was under no obligation to furnish them to subscribers to corporate stock who agreed to pay plaintiff certain amounts in consideration of the conveyance.  And any conversation concerning defects in the abstracts furnished was not prejudicial to defendant, in this action for the amount due plaintiff from him, where the defect was subsequently remedied and the title accepted.

**Same:** PERFORMANCE OF CONTRACT: EVIDENCE.  Where, as in this case, deeds and abstracts of title were received and retained by the corporation without objection, an agreement of the shareholders to negotiate an exchange of the property so purchased for other property was competent evidence on the question of plaintiff's performance.

**Evidence of value:** HARMLESS ERROR.  Where a witness has testified that he did not know the value of property it is error to permit him to state that the same was considered worth a certain sum; but under the facts of this case the admission of such evidence is held to have been without prejudice.

*Appeal from Hamilton District Court.*—HON. R. M. WRIGHT, Judge.

MONDAY, APRIL 11, 1910.

THE plaintiff, besides operating a hotel at Granite, Ore., had certain mines known as "Morris mine" and "Alice A." The latter was a placer mine, "just a mining claim located;" but the former was a quartz mine to which a patent had issued. In the summer of 1904 several persons in Hamilton County, aided by others in Palo Alto and Pocahontas Counties, were induced to enter into an agreement with plaintiff, by the terms of which plaintiff, as party of the first part, undertook to convey by warranty deed the "Morris mine" and the "Alice A" by special warranty deed to the "Iowa Oregon Company, a corporation organized under the laws of Oregon, and deliver to it a good and sufficient abstract of title," showing a clear and unincumbered title in said grantor for the

said "Morris mine" and a clear and sufficient title to said grantor for the said "Alice A," except such interest as the United States have therein. And in consideration said persons, as "parties of the second part, do hereby agree to pay for one-half (½) of the capital stock of said 'The Iowa-Oregon Company,' the sum of twenty thousand dollars ($20,000.00) at the following times and in the following manner, to wit: Ten thousand dollars ($10,-000.00) cash and ten thousand dollars ($10,000.00) within one year from the date hereof, of which each of the said second parties do hereby bind themselves to pay only in proportion to amount of stock subscribed by each respectively, and nothing in this paragraph shall be construed to in any manner bind or make liable any of the said second parties for any sum or sums either in cash or time payments, other than that for which he himself subscribed." Then followed stipulations that the capital stock of said company be two hundred and fifty thousand shares of par value of $1 each, of which ninety thousand shares should be placed in the treasury as treasury stock, one-half to be contributed by the party of the first part, and the other half by the parties of the second part, to be sold as directed by the board of directors at not less than par value until otherwise ordered and the proceeds expended in development of the property.

The remaining capital stock, consisting of one hundred and sixty thousand (160,000) shares, of which eighty thousand (80,000) shares are subscribed for by the party of the first part and eighty thousand (80,000) shares are subscribed for by the parties of the second part, shall be placed in the First National Bank of Baker City, Oregon, subject to the following conditions, to wit: Said board of directors of the said Iowa-Oregon Company may at any time make demand on said bank to deliver to them or their duly appointed agent any number of shares of the stock belonging to the said second parties, upon the payment or tender to said bank the sum of twenty-five cents

(0.25) per share for each and every share so demanded, which said sum of twenty-five cents (0.25) per share by said bank is to be placed to the credit of the said party of the first part, and said bank is here authorized and empowered to fill in a certificate in proper manner designating the number of shares for which said certificate shall be issued as per order, from the said board of directors of the said 'Iowa-Oregon Company,' setting out the names of the persons or person to whom said stock certificate is to be issued and the same forwarded to the secretary of the said company, who shall have the same properly executed, and all sums of money arising from the sale of any of the said stock so obtained by the said board of directors shall be placed to the credit of the parties of the second part in the aforesaid bank of Baker City, Oregon, the same to be applied so far as may be necessary toward the payment of any balance due the party of the first part at the time of the maturity of the said final ten thousand dollar payment, and the balance remaining after the said final payment to said party of the first part, shall be paid to the parties of the second part according to their respective interests as indicated by the number of shares held by each of said second parties. It is expressly agreed and understood by and between the parties hereto that the said second parties shall pay or cause to be paid into the said bank the sum of ($10,-000) ten thousand dollars to the credit of the said party of the first part, within one year from the date hereof, binding themselves individually each for his proportionate share as indicated by the number of shares of said stock held by him, but nothing herein shall be construed to hold any of the said second parties liable for any greater part of the said sum of ten thousand dollars than is by himself subscribed and paid. . . . It is further agreed and understood that in the event of the failure of any of the parties of the second part to pay his proportionate share of the remaining ten thousand dollars ($10,000), as indicated by the amount of stock subscribed by him, the said board of directors shall cause, place or cause to be placed on the open market, the mining stock, a sufficient amount of his shares of said stock, and cause the same to be sold for the highest price obtainable, and the money so obtained shall be placed to the credit of his shortage

with the party of the first part and any of the shares remaining after the said shortage has been paid shall be the property of the said delinquent party, but should the number of shares subscribed by the said delinquent party be insufficient upon sale of the same, he shall be held personally liable to the said first party for any balance due.

The defendant paid $1,000 upon the execution of the contract, and the object of this action is the recovery of the deferred payment of a like amount. Issues were joined and trial had, which resulted in a verdict and judgment as prayed. The defendant appeals. *Affirmed.*

*Wesley Martin,* for appellant.

*G. D. Thompson* and *Boeye & Henderson,* for appellee.

LADD, J.—The petition alleged the sale of two mines to the defendant and associates; that by their direction conveyances were executed to the Iowa-Oregon Company; that in consideration thereof they paid $10,000 down and agreed to pay a like amount within one year; and that plaintiff was to receive forty thousand shares of the capital stock of said company of the par value of $1 per share; that they entered into an agreement for the organization of said company with a capital stock of two hundred and fifty thousand shares; that by the terms of said agreement defendant became liable for $1,000 of the deferred payment, for which sum, with interest, judgment was prayed. Subsequently, the petition was amended by alleging the execution of the deeds, furnishing of the abstracts and that the company had taken possession of the mines. The answer, as amended, interposed a general denial, save as otherwise appeared therein, admitted the execution of the contract, averred that it was without consideration, and was procured by fraud, in that plaintiff falsely represented

that he had paid $20,000 for one-half of the mines, and that each of two subscribers had paid the amounts respectively subscribed and pleaded settlement. He further alleged that one hundred and sixty thousand shares of capital stock had never been deposited with the First National Bank of Baker City, Ore., as stipulated in the contract. The last allegation, with some others, was stricken on motion.

I. After plaintiff's evidence in chief had been introduced, defendant asked that a verdict be directed in his favor, for that such an abstract of title to the mine as

1. ABSTRACTS OF TITLE: agreement to furnish same: performance.

agreed had not been furnished; that the petition did not allege, nor the evidence prove, that plaintiff had deposited capital stock with the bank as required by the contract. An amendment to the petition, alleging the furnishing of abstracts, and that the company had taken possession of the mines, was filed. In permitting this, there was no abuse of discretion. The evidence disclosed that abstracts were furnished to and retained by the company, that it had taken possession of the mines, that for a part of the time they were under the supervision of defendant, and that the stockholders, nearly three years after the making of the contract, entered into an agreement to exchange the property and stock for Missouri land. These circumstances sufficiently established the acceptance of the titles to the mines as in compliance with the contract.

The second ground involved the construction of the contract therein challenging the sufficiency of the petition, which also was done by motion in arrest of judgment. It

2. MINES AND MINING: contract of sale: recovery of purchase price: tender.

will be noted that the petition proceeds on the theory that plaintiff had sold to defendant and his associates certain mines. We think the evidence bears this out. The contract recited that plaintiff had executed deeds of the mines which "shall be delivered" to the company, and that in

consideration thereof defendant and his associates "agree
to pay for one-half of the capital stock of" said company
$10,000 in cash, and a like amount in one year, each to
pay, in proportion to the amount subscribed, the entire
amount to go to plaintiff. The conveyance of the mines
to the company, and not the stock, was the consideration
for which defendant and his associates undertook to pay
the $20,000. What follows fixes the interest of the re-
spective parties in the company. Its capital stock was
to be two hundred and fifty thousand shares of the par
value of $1 each. Plaintiff was to have half of this stock,
and defendant with his associates one-half, but from each
half forty-five thousand shares were to be contributed to
the treasury; the remaining one hundred and sixty thousand
shares were to be deposited in the First National Bank of
Baker City, Ore., and plaintiff was not to sell any of his one-
half within a year; forty thousand shares were to be is-
sued to defendant and his associates and left in the bank
until the deferred payment was met; but the board of
directors of the company was authorized to procure of the
bank any number of these on payment of twenty-five cents
a share, the bank to insert the number of shares and the
names of the parties entitled thereto in the stock certifi-
cates and forward to the secretary of said company to be
properly executed. The moneys so paid were to be applied
on the deferred payment, and, upon full payment, the
bank was to deliver this first forty thousand shares and
enough stock to make up the last forty thousand shares.
It was expressly agreed, however, that defendant and his
associates should pay, or cause to be paid, into the bank,
the entire $10,000 within one year, "binding themselves
individually each for his proportionate share as indicated
by the number of shares of stock held by him, but noth-
ing herein shall be construed to hold any of said second
parties liable for any greater part of the said sum of ten
thousand dollars than is by himself subscribed and paid,"

The defendant's portion of the deferred payment was
$1,000, and there is no pretense that he ever paid the same
to the bank, and, unless released therefrom, this was
owing plaintiff, not for stock, as assumed
by appellant, but as part of the considera-
tion for the conveyance of the mines to the company. The
contract is silent as to who was to organize the company;
but it plainly indicates that this was to be done for the
purpose of acquiring and operating the mines. The ob-
jects to be accomplished through the stipulation with
reference to the issuance and distribution of stock were:
(1) The awarding to each the interest in the mines to
which he was entitled; (2) the procurement of funds for
the operation of the mines through the sale of treasury
stock contributed by the stockholders ratably; (3) the
security of the deferred payment owing by defendant
and others by the deposit of the stock with the bank. That
the shares of stock to be issued to defendant and his asso-
ciates were so held plainly appears from last clause of the
contract authorizing the board of directors to sell the
shares of any delinquent and apply the proceeds upon the
amount due from him. And the parties to the agreement
so construed the depositing stock as being for the security
of plaintiff. One of the subscribers, B. F. Keltz, testified
to having issued, as secretary, certificates for one hundred
and sixty thousand shares, one-half of which was sent
directly to the plaintiff. Though forty thousand shares
issued to defendant and his associates were to be deposited
with the bank, they were delivered to them, and the re-
maining certificates for the forty thousand shares were
sent by Keltz to plaintiff's attorney, who retained them
as collateral security on the deferred payments. The de-
fendant knew this, and, upon being employed by plaintiff
to collect the several amounts subscribed by his associates,
arranged that plaintiff send certificates of stock as pay-
ments were made. Being held as security, the defendant

*3. SAME:
consideration.*

is not entitled to the certificate of four thousand shares until payment of the debt has been effected. It follows that there was no error in permitting recovery in the absence of the delivery or tender of the stock.

II. The ninth division of the answer was rightly stricken, for that plaintiff was not required to deliver an abstract of title to defendant or any of the subscribers, and the allegation that he had not done so constituted no defense.

4. SAME: abstract of title: evidence of defects.

The exclusion of the testimony of defendant concerning a conversation about the abstract was without prejudice, for the defect referred to was subsequently cured and the title accepted.

III. The shareholders of the Iowa-Oregon Company negotiated a contract for the exchange of the stock therein for Missouri land, and this was signed by all the shareholders, including defendant. This was received in evidence over objection. It was admissible as tending to prove an acceptance of plaintiff's performance of the agreement. Surely, after the company received the deeds to the mining claims and the abstracts of title thereto and retained them without objection for more than two years, an agreement of all the alleged purchasers of the mines to transfer the claims with their shares for land was material and competent evidence of acceptance.

5. SAME: performance of contract: evidence.

IV. H. O. Hyatt had been manager at the mines a year and worked at other mines, but said he was unable to say what these were worth. He was then asked, "What in your opinion was the fair value of this mine in the fall of 1904?" Over defendant's objection that the witness had stated he did not know and was not qualified to answer, he was permitted to say, "Why, we considered the mine worth $50,000 when we——." A motion to strike the answer as

6. EVIDENCE OF VALUE: harmless error.

not competent was overruled.  That this was error appears from *Clausen v. Tjernagel*, 91 Iowa, 285.  This was without prejudice, however, for its only bearing was on the plea of want of consideration, and defendant disposed of this by admitting as a witness that the mines were worth $1,000.

Some other matters are mentioned in argument, but none requiring discussion.

The judgment is *affirmed*.