CALVIN MARKLEY, Appellee, v. WESTERN UNION TELEGRAPH CO., Appellant.

Telegraphs and telephones: AGENCY: NEGLIGENCE. The agent of a telegraph company, in whose office a telephone is maintained by the company for the purpose of receiving messages for transmission, is the agent of the telegraph company in receiving a message over the telephone; and the telegraph company is liable for the negligence of its agent in receiving the same, in the absence of rules to the contrary known to the sender.

Same: EVIDENCE OF CUSTOM: PREJUDICE. Since the law imposes liability upon a telegraph company for the negligence of its agent in receiving a message for transmission by telephone, evidence of a custom of thus receiving messages at another place, though erroneously received, was not prejudicial; as such evidence was in support of the law and not to the contrary.

Same: EVIDENCE: ADMISSIONS. Where the admission of a fact is made of record for the purposes of the case, a different state of facts cannot be shown; but the admission, in an action for negligence in the

sending of a telegram, that the message set forth was the telegram sent by plaintiff, when made simply as a matter of identification and to avoid the necessity of preliminary proof, was not a binding concession.

**Judgments:** EXECUTION SALE: ABATEMENT OF ACTION. The purchaser 4 of a judgment on execution sale can only acquire such interest in the judgment as the plaintiff may have, which is subject to final determination of the case on appeal. And upon reversal of the judgment on appeal it becomes his duty on a retrial to present his claim of ownership thereof to the court and ask to be substituted as plaintiff, or move a dismissal of the action; and where he fails to do either, and the defendant fails to ask for a change in the party plaintiff, the defendant cannot plead or prove the alleged change in ownership of the judgment, by way of defense or in abatement of the action.

**Telegraphs and telephones:** NEGLIGENT DELAY: INSTRUCTIONS. In an 5 action against a telegraph company for negligent delay in the delivery of a message, where the court instructed, on the issue as to whether the agent wrongly addressed the message received by telephone for transmission, that if the agent understood the address correctly and so forwarded it the company was not negligent, while if he understood the address correctly and erroneously forwarded it the company was negligent, the further instruction that it was the duty of the company to use ordinary care to deliver a message to the person for whom it was intended, did not mislead the jury into imposing upon the company a greater burden than the law exacts.

**Same:** Where a message was correctly received by a telegraph com- 6 pany but it was forwarded in an erroneous form, the duty of correctly transmitting and promptly delivering the same continued; and the company was chargeable with the duty of delivering it to the addressee within a reasonable time.

**Same:** EVIDENCE: CONCLUSION OF WITNESS. A witness who has ob- 7 served the relations of a parent and child may testify to the state of affection existing between them, though in the nature of a conclusion drawn from their acts and manifestations toward each other, which are not always possible of detailed description.

**Same:** DAMAGES: EXCESSIVE VERDICT. There is no fixed standard by 8 which the damages in an action for negligent delay in the delivery of a telegram are to be estimated, and not being capable of definite proof much is left to the discretion of the jury; and in the absence of some showing indicating passion and prejudice their verdict will not be disturbed.

*Appeal from Carroll District Court.*—HON. F. M. POWERS, Judge.

THURSDAY, MAY 15, 1913.

ACTION at law to recover damages for delay in the delivery of a death message. Trial to a jury. Verdict and judgment for plaintiff for $550. Defendant appeals.—*Affirmed.*

*Lee & Robb, George H. Fearons,* and *Miller & Wallingford,* for appellant.

*J. B. McCrary* and *G. B. Bowen,* for appellee.

WITHROW, J.—This is the third appeal in this case. The opinion in the first appeal is reported in 144 Iowa, 105; opinion in the second appeal will be found in 151 Iowa, 612. The original issues were fully stated in the previous opinions. Since the second trial in the lower court, by amendment to its answer, the defendant denies that the said Calvin Markley is the owner of the claim sued upon, and avers that he is not the real party in interest, and cannot maintain the action. The message which is the basis of the action was communicated by Stephen Markley, brother of the plaintiff, over the telephone to the agent of the defendant on the night of December 28, 1906, and was by such agent sent to Plattsmouth, Neb., at 9:45 p. m. of that day. The message was as follows:

Glidden, Iowa, 11—28—06.
By phone 9:10 p. m.
   To Carroll Markley, Plattsmouth, Neb.—Mother not expected to live until morning. Come at once.
9:45 p. m.                                    S. Markley.

It was not delivered to plaintiff until December 31, 1906, between 9 and 10 o'clock a. m. Leaving by the first

train, he did not reach the home of his mother until after her death, but was present at the funeral.

The defendant kept a telephone in its office at Glidden, over which communication of the message in question was made by S. Markley to the agent of the defendant, and was by him forwarded to Plattsmouth within a reasonable time. The plaintiff's name is Calvin Markley. The message, as sent and as finally received by plaintiff, was addressed to Carroll Markley. Stephen Markley, the sender, testified that he gave the message over the telephone to the agent, addressed to his brother by his correct name, and that as thus given it was repeated back to him by the agent of the defendant and verified. The agent testified that the telegram as sent was given by Stephen Markley. He had known the Markley boys in a general way for several years, and before plaintiff removed to Plattsmouth from Carroll county, but did not known the given names of all of them.

I. As bearing upon several question which arise in the case we consider, first, that which relates to the use of the telephone in sending the message to the defendant, to be forwarded to its destination. On the part of the appellant it is claimed that in receiving the message the agent of the defendant at Glidden was acting as the agent of the sender, S. Markley, and its liability could not arise for negligence on the part of its agents in the transmission and delivery of the message after being so received. In support of such contention reference is made to two cases decided by the Supreme Court of Texas: *Telegraph Co. v. Foster*, 64 Tex. 220 (53 Am. Rep. 754) ; *Telegraph Co. v. Seiders*, 9 Tex. Civ. App. 431 (29 S. W. 258). A contrary rule is announced in *Bowie v. Western Union Telegraph Co.*, 78 S. C. 424 (59 S. E. 651) ; *Carland v. Western Union Telegraph Co.*, 118 Mich. 369 (76 N. W. 763, 43 L. R. A. 280, 74 Am. St. Rep. 394) ; *Western Union Telegraph Co. v. Todd* (Ind. App.) 53 N. E. 194; and as bearing upon it see, also, *People ex rel. Cairo Telephone*

1. TELEGRAPHS AND TELE-PHONES: agency: negligence.

*Co. v. Western Union Telegraph Co.*, 166 Ill. 15 (46 N. E. 731, 36 L. R. A. 637). The rule of these cases, we think, is founded in better reason. The defendant company had in its office in Glidden a telephone over which the message in controversy was received by its agent to be forwarded. It is contended, and the Texas cases above cited so hold, that in receiving the message over the telephone the operator was acting for the sender, and if there was any negligence in receiving or transmitting the message for sending that such could not be charged to the defendant. The cases holding the contrary doctrine are made to rest upon the principle that if by the installation of a telephone in its office a means of communication with it is afforded, by which messages may be sent to it for transmission, and if such means is employed, in the absence of a showing of a rule to the contrary, known to the sender, the act of the agent in receiving the message for transmission is the act of the telegraph company. The defendant is not bound to keep a telephone in its office, over which messages may be sent to it to be forwarded. If it does so, it must be held to the exercise of reasonable care in thus receiving messages. It had the right to require all tendered messages to be in writing, and to make such reasonable rules as might be necessary for its own protection and for the accurate care of its business; but, in the absence of any showing that there were such rules, which were known to the sender of the message, it must be presumed that the use of the telephone was a means permitted by it to be employed in receiving messages for forwarding. So permitting it, if there was negligence on the part of its agent in receiving the message, such would be the negligence of the defendant. There was dispute in the evidence as to whether the message, as finally sent, was the message received by the agent, and adopting the theory of the law as above stated, the lower court, under proper instructions, submitted the question of fact to the jury.

II. Evidence was offered by the plaintiff and, over the

objection of the defendant, was admitted, which tended to

2. SAME: evi-
dence of cus-
tom: preju-
dice.

show that in the telegraph office of defendant at Carroll, another station in the county where this cause of action arose, it was a custom to receive messages over the telephone and forward them. Holding as we do above as to the law which fixes duty and liability in such instances, it is quite immaterial whether there was a custom, unless that custom was to the contrary. While the receiving of evidence as to a custom in one place to establish a duty in another would be erroneous, had such evidence any bearing upon the legal rights of the parties, in the present case it was without prejudice; for under the facts, which are not disputed, we hold there was that which created a duty of the defendant in receiving the message, and the evidence which is criticised has no other than a cumulative purpose.

III. But it is claimed by appellant that, it having been admitted upon the trial of the cause that the message

3. SAME: evi-
dence: admis-
sions.

as above set forth was the telegram sent by S. Markley of Glidden, Iowa, to Carroll Markley, Plattsmouth, Neb., evidence as to the telephone conversation immediately preceding its sending was incompetent. It is true that when a fact is, by agreement, made a part of the records, for the purpose of the case, a different condition or state of facts cannot be shown. Both parties are bound by the concession. *Luther v. Clay*, 100 Ga. 236 (28 S. E. 46, 39 L. R. A. 97); Ency. of Ev. vol. 1, p. 473. A fair reading of the language of the record entry leads us, however, to the conclusion that no more was intended by it than the identification of the telegram, thus avoiding the necessity of the preliminary proof requisite to its admission, rather than to conclude the plaintiff as to his claim of negligence based upon the alleged error of the agent in writing the message.

IV. Error is charged in giving instruction No. 2 in

failing to include an element which, under the issues, it is
claimed plaintiff was required to prove, i. e.,
that he was the owner of the claim.  In amend-
ment to its answer defendant denied the plain-
tiff's ownership and right to sue, and upon
the ‚trial offered evidence in support of its claim of change
of ownership.  The court, on motion, struck that testimony
from the record.  If its ruling upon the motion was correct,
there was no fault in omitting that element from the instruc-
tion.  Before the ‘ entry of judgment upon the verdict in
the prior hearing of this case, a judgment creditor of the
plaintiff caused execution to be issued from the office of the
clerk of the district court of Carroll county, and after judg-
ment was entered in court in the case levy was made upon it,
and by proper proceedings the judgment was sold at sheriff's
sale to one Saul, and proper record entry of such fact was
made by the sheriff upon the appearance docket.  The levy
and sale were prior to the time when the appeal from that
judgment was perfected.  By the reversal of the case by this
court that judgment was found to be erroneous, and the case
again came on for trial in the Carroll district court, which
trial resulted in the judgment from which appeal was again
taken and is now being considered.  · Evidence tending to es-
tablish these facts was introduced over objections, and later,
upon motion, was stricken from the record.  The defendant,
having in amendment to its answer denied plaintiff's owner-
ship of or right to ·sue upon the claim, now urges error on
the part of the lower court in striking from the record the
evidence in support of the issue, and error also is alleged in
the refusal by the court to submit the question of ownership
of the claim to the jury.

   In our opinion, in· so ruling and in not so instructing,
the lower court was right.  We find it unnecessary to deter-
mine whether the proceedings and sale under the execution
resulted in an assignment by legal methods of the claim upon
which the judgment was based.  If it did not, the ruling of

4.  JUDGMENTS:
   execution
   sale: abate-
   ment of ac-
   tion.

the lower court was correct. If it did, Code section 3476 has application. That section provides that "no action shall abate by the transfer of an interest therein during its pendency, and new parties may be brought in, as may be necessary." While at the time of the sheriff's sale appeal had not been perfected, the right of appeal yet existed; and the purchaser took whatever rights he acquired in the judgment subject to such action as the judgment defendant might legally take. Upon appeal and reversal the claim, and not the judgment, represented the right, either of plaintiff or of said Saul, if that passed to him under the sheriff's sale. Upon the trial Saul, claiming to be the successor in right to plaintiff, as a witness stated that he did not desire to be substituted as plaintiff. If he was the owner of the claim, by proper pleading and showing he had the right to ask to be substituted as plaintiff, or move for a dismissal of the action. He did neither. The defendant did not ask for a change in the party plaintiff, and it had not the right, under section 3476, to plead such by way of defense or abatement. *Mayo v. Halley,* 124 Iowa, 675, and cases therein cited. There was no error in striking from the record the evidence upon the question of ownership, or in not stating that fact as an issue to be determined by the jury.

V. Instruction No. 4 is criticised, in that it charged the jury that the defendant company was bound to use ordinary care to deliver the message to the person for whom it was intended. It is claimed that its duty only was to deliver the message to the person to whom it was addressed, and that a greater obligation was placed upon it in the present case than the law permits. It was a question of fact in the present case as to whether the defendant was liable for negligence in addressing the message to "Carroll" instead of "Calvin" Markley. The fifth instruction expressly told the jury that if the defendant's agent understood the name to be Carroll, and so sent it, that the defendant would not be negligent. If,

5. TELEGRAPHS AND TELE- PHONES : neg- ligent delay : instructions.

however, he understood the name to be Calvin and erroneously wrote the message and addressed it to Carroll, such, in the sixth instruction to the jury, it was stated, would be negligence of the defendant. Arising a condition which would amount to negligence, as stated in the sixth instruction, the law announced in the criticised instruction would be applicable, and not misleading to the jury; for, if facts were found which established grounds of actionable negligence, there necessarily would be the finding that the message was intended for the plaintiff. While, as a general statement of a proposition, the instruction may, perhaps, be open to the criticism lodged against it, yet as applied to this case we hold that, when given in connection with those immediately following, it is without prejudice.

VI. It is claimed that the verdict is contrary to instruction No. 5, and also that there was error in giving instruction No. 7; the two being alleged to be inconsistent. Keeping in mind the fact that the important question upon which liability was made to depend was as to the alleged negligence of defendant's agent in sending the message to "Carroll" instead of "Calvin" Markley, there is no conflict in the rules stated; nor was defendant, on its motion, entitled to have the verdict set aside as contrary to instruction No. 5.

VII. Instruction Nos. 3, 10, and 11, given by the court, are objected to as erroneous, in that each assumes that the message in question was "to the plaintiff,"

6. SAME.

not qualifying or limiting the effect of the statement as the dispute as to the facts would require. While undoubtedly the message was intended for plaintiff, it was not addressed to him. Under the instructions, before defendant could be held liable, the jury must have found that the message originally was addressed to Calvin Markley, and that it was negligently changed. It therefore was, under the law, a message to the plaintiff. Under proof, as the evidence in this case tends to show, although in dispute, that the message was correctly received, but forwarded in an erroneous form by the

agent at Glidden, the duty of the defendant would continue from the time the message was tendered to it for transmission until its delivery; and if the facts were as claimed by plaintiff, and which the jury must have found by their verdict, it would be charged with the obligation to deliver to plaintiff, within a reasonable time, the message in the form received by its agent at Glidden. There was no error in the instruction.

VIII.   Error is urged against the action of the trial court in admitting evidence as to the state of feeling existing between the plaintiff and his mother, on the grounds that, as to one witness, it related to a time remote from the transaction in controversy, and as to others that the evidence admitted consisted of conclusions only. As bearing upon the question of mental suffering, it was, of course, competent to prove the state of affection between plaintiff and his mother, if such existed. To the observer of such relations the result is naturally summed up in what might probably be termed a composite view, made up of acts, incidents, and manifestations not always possible of detailed description, but as a· whole carrying to the mind the ultimate fact to be derived from them all. The authorities cited as to cases of this class, when mental suffering is an element, do not state a contrary doctrine. Neither do we find the objection as to the remoteness of the evidence from the time of the death of the mother to be well taken. The feelings of affection between mother and son, if such existed, were naturally continuous, unless broken or interrupted; and when, as the evidence tends to show, it existed up to the time of her death evidence as to a time a year distant was not incompetent. There was no error in the respects charged.

7. SAME: evidence: conclusion of witness.

IX.   Finally, it is claimed that the damages awarded by the jury were excessive. The amount allowed was greater than have, in some instances, been returned by juries in like cases, and is less than in others. There is no fixed standard which the courts may adopt above which juries may not go; but the

8. SAME: damages: excessive verdict.

question is one which, not being capable of definite proof, must depend upon the fair discretion of the jury. In the absence of other conditions tending to show that the jury was influenced by passion or prejudice from the size of the verdict returned in the present case, we cannot conclude that it so acted; and we therefore are not disposed to reduce the damages allowed, nor to grant a new trial because of it.

Finding no prejudicial error, the judgment of the lower court is *Affirmed*.