CECIL HOLDEN, Appellant, v. HARRY HANNER, Appellee.

No. 45642.

JANUARY 13, 1942.

A. H. Christensen and Putnam, Putnam, Fillmore & Putnam, for appellant.

R. E. Duffield, for appellee.

HALE, J.—The collision in question occurred about 12:30 p. m., on March 1, 1940, within the limits of the town of Guthrie Center, near the top of a hill on highway No. 64, which runs east and west and in the town is known as State street. To the west of the crest of the hill 12th street intersects highway No. 64 from the north. As the parties approached the top of the hill, plaintiff was driving his automobile on highway No. 64, toward the west and on the north side of the highway, and the defendant was driving his automobile east on highway No. 64 on the south side of the highway.

The testimony of the plaintiff was that to one driving west on road 64, as he approaches the place of the accident, " * * * there is no vision from your automobile until you get to the peak of the hill, and then it seems to just drop over. That is the best way I can describe it." At the foot of the hill and east of it, was a "45-mile" sign. About 200 feet west from this sign is a "Slow" sign, and farther west and about 150 feet from the intersection, a sign, "Caution—Heavy Cross Traffic", all signs being east of the crest of the hill. According to his testimony, as plaintiff came over the crest of the hill he saw the defendant's automobile coming "right at him" on the north side of highway No. 64. He further testified that when he reached the crest of the hill he put on his brakes, and there may have been a fraction of a second in which he could have gone 25 or 30

feet before he got his hands on the brake; that on good roads he could stop, at 30 miles an hour, in 40 feet; that he was going about 30 miles an hour—"I could be safe in saying I was traveling 30 or maybe 35 miles per hour." He testified that the defendant was driving on the left side—that is the north side—of the pavement, and that the collision was "a direct hit." The defendant was coming from the south side of the road to turn north to his left onto 12th street. The collision occurred on the north side of the road, plaintiff's car striking defendant's car at the right front corner.

The testimony of defendant was that he was traveling about 25 miles per hour until he slowed down to make a left turn north into 12th street. Defendant also testified that he made a left-hand signal for about 25 feet, just prior to the turn onto 12th street; that he looked east and saw no car, and turned his car in a northeasterly direction to make the turn to the left; that he turned over a manhole in or near the center of the intersection of 12th street and highway No. 64; and that the collision occurred when his left front wheel was somewhere near over the manhole and his right front wheel about 2 feet north of the center of highway No. 64. He testified further that his car was going 10 miles an hour at the time of the accident. His testimony as to visibility to the east was: "About where you make a lefthand turn at the intersection of where 12th street turns off of 64 or State street, you can see about 200 feet, you can see the top of a car when it appears in sight about 200 feet, I would say." He made an observation just before he started to make the turn. On cross-examination he said: "I could see from the place I began to make the turn to the east some 200 feet, I would say;" and that before he started to make the turn he looked to the east and could not see a car. The accident happened after that "just about as quick as you could snap your fingers. From the time I looked to the east until the accident happened, I traveled maybe 6 or 8 feet; just traveled enough to get started in a northeasterly direction." There were, of course, other witnesses as to some of the facts, but the foregoing are the essential points of the testimony of the parties.

At the close of all the testimony plaintiff moved for a di-

rected verdict against the defendant on the defendant's counterclaim. This motion was overruled. Verdict was returned in favor of the defendant on his counterclaim and judgment entered thereon, and from this judgment plaintiff appeals.

 The grounds of plaintiff's motion for a directed verdict were: (1) insufficient evidence as to defendant's counterclaim; (2) failure of defendant to show negligence of plaintiff; (3) the evidence shows plaintiff not negligent; (4) defendant has failed to show that any negligent act or omission on the part of the plaintiff was the proximate cause of the accident as alleged in defendant's counterclaim; (5) the affirmative evidence shows upon the whole record as a matter of law that defendant was guilty of contributory negligence; and (6) it would be the duty of the court to set aside a verdict in favor of defendant as contrary to the record evidence and to the law.

Plaintiff's first assignment of error is the court's overruling of grounds 1, 5, and 6 of the motion, and he argues that under the facts of this case the physical-fact rule is applicable as establishing defendant's contributory negligence, because, under the law, he failed to make an efficient observation, failed to see what could be seen, and voluntarily drove into a zone of manifest danger. The plaintiff's argument is based on the claimed fact that defendant could see the car approaching from the east, and, as plaintiff states, he failed to make an efficient observation and failed to see what could be seen.

As to the question of defendant's contributory negligence as a matter of law, plaintiff asserts that the statement made by defendant showed the visibility of a car at 200 feet. At the most, defendant said, on cross-examination, that he could see a car from the place where he began to make the turn "to the east some 200 feet away, I would say," which, of course, is an estimate and one that is very doubtful, considering the lay of the land. There is no positive statement of defendant as to the position of plaintiff's car, or its visibility at the time of defendant's making the turn, or starting to make it, and the statement must be considered in connection with all his testimony. Plaintiff insists that a car seen 200 feet away would remain visible throughout the journey west to the top of the hill.

Whether or not this is true, as we read the testimony we are satisfied that it was for the jury to determine whether the defendant could have seen plaintiff's car when he was at the turn. Plaintiff argues that the statement by defendant, as to his estimate of the distance at which the top of a car could be seen, concludes him; citing Stearns v. Chicago, R. I. & P. R. Co., 166 Iowa 566, 579, 148 N. W. 128, 133, in which the plaintiff testified, on direct and cross-examination, to the fact that the train did not stop—a matter about which he had positive information, and not an estimate or conclusion. Neither this case, while holding that a party is bound by admissions of fact made in his testimony, nor the Iowa cases cited—Markley v. Western Union Telegraph Co., 159 Iowa 557, 141 N. W. 443; Hinkson v. Morrison, 47 Iowa 167; Thornburg v. Doolittle, 148 Iowa 530, 125 N. W. 1003—can be held to support the conclusiveness of plaintiff's statement in this case; the Thornburg case only holding as to the testimony of values by a witness who testified he had no knowledge thereof. Cases are cited in the Stearns case both upholding and denying the rule.

An extended review of this proposition is found in 80 A. L. R. 624, in the annotation to the case of Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A. L. R. 619, dealing with the question of the right of a party to have a case submitted to the jury when his own testimony negatives the right of action or defense. It is therein considered that the rule contended for by plaintiff is the majority rule as to fact testimony. Many cases are cited. But the exceptions to the rule as to conclusiveness are also set out (80 A. L. R. 632); and the rule itself is also denied by a number of cases. However, the exceptions cited are to the effect that the rule is not intended to cover testimony of a party plaintiff which is but an expression of opinion of a witness, but can be applied only where the witness has testified as to a fact. See Rowe v. United Rys. Co., 211 Mo. App. 526, 247 S. W. 443, wherein the court said that the testimony of the plaintiff in his own behalf, as to the speed of the defendant's streetcar and the distance it was away from him at a given moment, was but a mere expression of his opinion and a mere conclusion on his part, and not a statement of fact, and, being

opinion evidence, it did not come within the rule sought to be relied on. See, also, Downs v. Racine-Sattley Co., 175 Mo. App. 382, 162 S. W. 331. In the case of Thompson v. Butler, 223 Iowa 1085, 1096, 274 N. W. 110, 115, there is reference to the Stearns case, supra; and it holds that it did not apply to the statement of a witness that he had no recollection of writing the original letter, and like statements, in view of his positive direct statements contradicting and denying the allegations of plaintiff's petition. "Testimony of a witness must be construed as an entirety."

A recent case discussing the conclusiveness of testimony is Wright v. Mahaffa, 222 Iowa 872, 270 N. W. 402, dealing with prior admissions in particular, but testimonial admissions also are discussed; citing Wigmore on Evidence, and also referring to Rowe v. United Rys. Co., supra. The citation in the Wright case is to the second edition of Wigmore on Evidence, and we find the question treated in IX Wigmore on Evidence (3d Ed.), sections 2588 to 2595, where a distinction is made between solemn judicial admissions and the ordinary or quasi-admission (section 2588): "* * * which indeed does not deserve to bear the same name. The latter is merely an item of evidence, available against the party on the same theory on which a self-contradiction is available against a witness." The subject is fully discussed therein and in following sections, citing the Kanopka case, supra, and various others showing what might be considered the general rule, and stating that the proposed rule is not a simple rule of thumb but a flexible one, and further saying (section 2594a):

"The truth of the case depends on a comparison of what all the witnesses say and all the circumstances indicate. A rule which binds a party to a particular statement uttered on the stand becomes an artificial rule. It is out of place in dealing with testimony."

We are satisfied that the opinion or conclusion of the defendant here, elicited on cross-examination, is not conclusive, and even if held to be a fact, would not necessarily, under all the circumstances of this case, as a matter of law, be conclusive on the defendant as to contributory negligence.

Plaintiff cites also a number of cases, none of which we think is so similar as to facts to the case at bar as to constitute authority for his statement that the defendant was negligent as a matter of law. We briefly review some of the cases cited. In Hewitt v. Ogle, 219 Iowa 46, 256 N. W. 755, there was no obstruction to the view. Kemmish v. McCoid, 193 Iowa 958, 185 N. W. 628, refers to a situation where the defendant, on driving from a private driveway into a public driveway, saw, or should have seen, a car 70 feet away. In Parrack v. McGaffey, 217 Iowa 368, 251 N. W. 871, at all times the defendant saw the approaching car. In Pender v. Des Moines Ry. Co., 217 Iowa 1152, 251 N. W. 55, the cars were approaching in plain view. He also cites Rosenberg v. Des Moines Ry. Co., 213 Iowa 152, 238 N. W. 703, in which case the plaintiff did not look or listen and the train was visible at 300 feet. Also Ward v. Zerzanek, 227 Iowa 918, 289 N. W. 443, which is another case in which the car was in plain sight; as is also Davis v. Hoskinson, 228 Iowa 193, 290 N. W. 497, where the facts were entirely different and the plaintiff was approaching at a high rate of speed. Neither do we think the case of Artz v. Chicago, R. I. & P. R. Co., 34 Iowa 153, where the plaintiff had an unobstructed view, nor the case of Darden v. Chicago & N. W. R. Co., 213 Iowa 583, 239 N. W. 531, where plaintiff's view also was unobstructed, applies to the facts in this case. None of these authorities fits the situation we have here. We do not think there is a showing that the defendant, as a matter of law, was guilty of contributory negligence.

▋ II. The second assignment of error is that the court erred in overruling grounds 1, 4, and 6 of plaintiff's motion for directed verdict, the substance of which grounds was that there was insufficient evidence to warrant a submission to the jury of said counterclaim, and that the defendant failed to show that any negligent acts of the plaintiff were the proximate cause of the accident. Plaintiff argues that, assuming the plaintiff to have been negligent, he was at all times upon his own, or the north, side of the street, and had it not been for the act of the defendant in suddenly turning to the left, in the line of travel of plaintiff's car, the accident would not have occurred, and that there was no showing that any negligence of the plaintiff was

the proximate cause of the accident. He further argues that the accident occurred within the city limits of Guthrie Center and that the plaintiff had a right to drive 45 miles per hour, so far as the speed zone is concerned, but that there is no evidence that he was driving that fast, let alone in excess of that speed.

We think the discussion as to contributory negligence determines this question. It was for the jury to determine whether the plaintiff, in view of all the warning signs he passed, on coming to the crest of the hill should have seen the defendant engaged in making a turn to the left. This created a fact situation rather than a question of law. Of course, the fact that plaintiff was entitled to drive 45 miles an hour does not necessarily exonerate him from negligence in driving at that, or even a lesser, rate of speed. Defendant's charges of negligence against the plaintiff in his counterclaim, were: first, excessive rate of speed; second, failure to have his car under control. It was for the jury to determine whether the car, under all the circumstances, was driven at a rate of speed which was not negligence, and it was also for them to determine the question of control as based on the facts and circumstances in the evidence.

We think the court was correct in overruling this, as well as the preceding, assignment of error. The cause should, therefore, be affirmed.—Affirmed.

BLISS, C. J., and MITCHELL, SAGER, OLIVER, GARFIELD, and WENNERSTRUM, JJ., concur.

MILLER, J., dissents.

MILLER, J. (dissenting)—I am unable to agree with the opinion of the majority herein and respectfully dissent.

The majority opinion undertakes to distinguish all of the cases relied upon by appellant and holds that none of such decisions require a reversal herein. I cannot so interpret the prior decisions of this court, particularly Hewitt v. Ogle, 219 Iowa 46, 256 N. W. 755; Kemmish v. McCoid, 193 Iowa 958, 185 N. W. 628; and Parrack v. McGaffey, 217 Iowa 368, 251 N. W. 871.

The defendant herein was undertaking to make a left-hand turn in front of the plaintiff's automobile. To accomplish such

maneuver, he was required by statute as well as by the rules of common law to see that there was sufficient space to make such movement in safety before undertaking to turn to the left. The burden was upon him to prove that he performed this duty. I am unable to find any evidence in the record which would warrant the jury finding as it did that he performed this duty. I think that his failure to perform that duty constituted negligence as a matter of law and that the motion for directed verdict in favor of the plaintiff on the defendant's counterclaim should have been sustained.

The statutory provision is section 5026.02 which reads as follows:

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this chapter, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn."

In the case of Parrack v. McGaffey, supra, we hold (217 Iowa at 371, 251 N. W. at 872) that the duty described in the above statute is imposed upon one who undertakes to make a left-hand turn in front of an approaching automobile, even without statute, stating as follows:

"The duty imposed upon the driver of an automobile under the foregoing statute and instruction requires the driver to see that there was sufficient space in which to make the turn in safety. This duty not only requires a driver to see that there is sufficient space to make the turn in safety, but also requires the driver to slacken the speed of his car to allow the approaching car to pass, if there is not sufficient space within which to make the turn. The exercise of ordinary care on her part, even without a statute, would require a person under similar circumstances to control his car in such a manner as to avoid an accident."

The foregoing language was cited with approval in the case of Wimer v. M. & M. Star Bottling Co., 221 Iowa 120, 125, 264 N. W. 262, 265, where we held that one who undertakes to make a left-hand turn in front of an approaching truck was guilty of contributory negligence as a matter of law which barred recovery and that one of the elements of such contributory negligence lay in the fact "that before making the turn to the left and changing his course, he did not first see that there was sufficient space to make such movement in safety."

The case of Kemmish v. McCoid, supra, does not involve a collision between two cars where one of them was undertaking to make a left-hand turn in front of the other. However, the case does hold that the plaintiff was guilty of contributory negligence as a matter of law in failing to maintain a proper lookout, that such contributory negligence is shown by the physical facts, and I am unable to distinguish the rule there applied from the situation that here confronts us. At pages 964 and 965 of 193 Iowa, pages 630 and 631 of 185 N. W., we state:

"Mrs. Kemmish does not claim, however, that she saw the approach of defendant from the north, nor that she believed that she had time to safely enter the highway and proceed southward thereon in the usual way of travel on the highway before defendant would reach the intersection, but claims that she looked, and saw nothing. She is either mistaken in her belief that she looked immediately before going upon the highway, or else she failed to see the car, which must have been very close and in plain sight. In either case, she was negligent. * * * The fact that the front end of defendant's automobile struck plaintiff's very nearly at the center, when the relative speed of the two cars is considered, shows that defendant's car must have been within 60 or 70 feet of the intersection at the time Mrs. Kemmish drove into the highway. The physical facts refute her claim that she looked to the north and that the defendant's automobile was not in sight."

The foregoing language is quoted with approval by us in the case of Hewitt v. Ogle, supra. In that case we also held that the physical facts demonstrated a failure to maintain a

proper lookout by the plaintiff to observe the defendant's car and because of such negligence, a motion to direct a verdict was properly sustained. At pages 49 and 50 of 219 Iowa, pages 756 and 757 of 256 N. W., we state:

"Assuming that the defendants' car was traveling at the maximum speed as testified by plaintiff's witness, it would have traveled five times as fast as the plaintiff's car was traveling while crossing the intersection. The defendants' car could not have traveled more than 175 feet while plaintiff's car was traveling the 35 feet which he testified it had proceeded from the sidewalk on the west side of the intersection to the point where it was struck. There is other evidence which is not contradicted and which tends very strongly to show that the distance from the point where plaintiff claims that he and his decedent looked southward to the point where the road begins to make a dip is more than 300 feet, and there is no evidence that the so-called dip is sufficiently deep at any point so that a car at any point on the road for a distance of 600 feet south of the intersection could not be seen from the point where plaintiff testified that he and his wife looked. Leaving this testimony out of consideration, however, and taking the plaintiff's own testimony in which he states that he and decedent looked down the road southward and could see the surface of the road for 225 to 250 feet, it is quite apparent that the defendants' car must have been upon the road and in plain view of the plaintiff and his decedent at the time they reached the sidewalk on the west side of the intersection where he testified that they both looked to the southward.

"Under the undisputed evidence and the physical facts it appears that the defendants' car must have been in plain view on G street and not more than 175 feet south of the intersection at the time that plaintiff and decedent looked to the south. We are not here dealing with a case where either plaintiff or his decedent saw the defendants' car approaching and thought that they would have time to proceed through the intersection before it came in collision with them. The direct and positive testimony of the plaintiff is that both he and decedent looked and that neither of them saw the defendants' car. As has been said in

cases involving similar situations, either the plaintiff and his decedent did not look, or, if they did look and did not see what was plainly in their view, they did not use ordinary care in looking. In either event, they were both guilty of contributory negligence, and contributory negligence on the part of decedent is, of course, an absolute barrier to recovery in this action. The physical fact rule applicable to situations such as that presented by the evidence in this case is so well established that it requires no extended citation of authorities.''

Applying the foregoing pronouncements to the situation that here confronts us, it is apparent that when the appellee approached the intersection of 12th street and undertook to turn to the left thereon, it was his duty both by reason of statute and by reason of the common law to first see that there was sufficient space to make the turn in safety and to exercise ordinary care in such a manner as to avoid an accident. The burden was upon the appellee to establish the fact that he performed such duty. As stated by the majority opinion, when appellee was about to make the turn to the left, he looked to the east, could see some 200 feet, saw no car approaching, started his turn, traveled six or eight feet and was struck when the front end of his car was about two feet across the center of the highway. This is the evidence upon which he relies to establish that he maintained a proper lookout. I cannot agree that it is sufficient to sustain the burden cast upon him.

As stated by the majority opinion, the evidence shows that appellant's car was traveling about 30 to 35 miles per hour and that at the time of the collision, appellee had slowed down to about 10 miles per hour. Giving the appellee the benefit of the doubt and all reasonable inferences, appellant's car was not traveling more than four times as fast as appellee's car. Applying the physical fact rule which we applied in the case of Hewitt v. Ogle, supra, if appellee looked to the east and only traveled 8 feet thereafter, as he says, appellant's car was only about 30 feet away and under any consideration of the evidence must have been in plain view. Either appellee did not look as he says he did or he did not see what was in plain view. In either case he was negligent.

480

The majority opinion lays great stress upon the fact that appellee is not bound by his estimate that he could see 200 feet when he looked. I do not think this feature of the case is in any way decisive. If he looked when he said he looked, he did not have to see any 200 feet to see appellant's automobile. It was his duty to look. It was his duty to prove that he looked and to prove when he looked. His testimony as to when he looked precludes him from recovering herein if we are to follow our former decisions which I am unable to distinguish. Accordingly, I would reverse.