BURT JONES, Appellee, v. E. E. SPENCER, Appellant.

**TRIAL:** Instructions—Applicability to Evidence. Instructions not
1 applicable to the evidence are erroneous. So held where the court directed the jury to consider the adulterous relations between the parties during a time when no such relations were shown.

EVIDENCE: Relevancy and Materiality—Unidentified Letter. Testimony which is without probative force, and which can serve no purpose other than to enable the jury to make a bold guess at the existence of a material and issuable fact, is wholly incompetent.

WITNESSES: Cross-Examination—Unjustifiable Latitude. A cross-examination over matters which have no relevancy whatever to the direct examination, nor to any fact in issue, is wholly unallowable.

*Appeal from Harrison District Court.*—THOMAS ARTHUR, Judge.

JANUARY 20, 1920.

ACTION at law to recover damages for the alleged alienation of the affections of the plaintiff's wife. Verdict and judgment for plaintiff, and defendant appeals.—*Reversed.*

*Robertson & Havens,* for appellant.

*Burke & Welch,* for appellee.

WEAVER, C. J.—The plaintiff and his wife, Catherine, were married in 1901, and they lived together, in a more or less intermittent way, until the year 1918. Six children were born of this union, and still survive. In March, 1918, they seem to have had a serious quarrel, after which they ceased to maintain conjugal relations, though the wife did not leave the house in which they lived until September following. This action was begun in December of the same year, and trial was had in January, 1919.

Of the various errors assigned for a reversal of the judgment below, we think it necessary to consider only the following:

I. The plaintiff, in his petition, alleges that the wrongful acts charged against the defendant had their inception in the year 1917, and continued thereafter down to the

commencement of this action.   As a wit·

1. TRIAL: in-
   structions: ap-
   plicability   to
   evidence.

ness on the trial, he testified:

· "My wife and I never had any trouble until March, 1917.   She acted all right up to then."

Again, he places the date of the break in their nuptial peace and happiness a year later, saying:

"I never had any complaint about my wife's treatment and affections before March, 1918.   I am positive of that."

Other witnesses by whom it was sought to show compromising or improper conduct between the wife and defendant refer to dates in 1917 and 1918.   The few other matters spoken of as occurring earlier are of such vague and indefinite character, or so clearly without ground to justify any inference of wrong, that we think it must be said there is no evidence in the record from which the jury could properly find anything of an improper character in the relations between defendant and plaintiff's wife at any time prior to the date fixed by the plaintiff himself.   Because of this state of the record, the appellant complains of an instruction given by the court to the jury, in which it is said:

"16. In this connection you are instructed that the plaintiff can only recover for the adulterous act or relation between the defendant and his wife, Harriett Catherine Jones, committed and had within the two years next prior to the commencement of this action, as I have before explained; but you will be permitted to consider testimony with reference to the parties prior to the said two years, for the purpose of showing the situation, acts, conduct, and relation of the parties then, and as bearing upon their situation, acts, conduct, and relation within the period of the said two years."

Of this instruction the criticism is that it is not justified by the record, in that there is no testimony from which

the jury could properly find that there were any adulterous acts or relations between said parties prior to the two years next preceding the commencement of this action. For the reasons already stated, we hold that the exception is well taken, and that the giving of the instructions was prejudicial error.

II.    Nora Petroff, sister of plaintiff's wife, who is "not on speaking terms with the defendant," testifying for plaintiff in relation to a time when she says Mrs. Jones was visiting at the home of the witness, was asked by plaintiff's counsel:

2. EVIDENCE: relevancy and materiality: unidentified letter.

"Q. Did you see any correspondence between Mr. Spencer and Mrs. Jones while Mrs. Jones was there, and while her husband was in the hospital? A. Yes. Q. Do you know what became of it? A. She burned it up. Q. Are you acquainted with Spencer's handwriting? A. No, I couldn't say I am. Q. After you read it, what did you do with the postal card? A. I gave it to Mrs. Jones. Q. How was the postal card signed? A. S. E. E. Q. What are Mr. Spencer's initials? A. E. E. S. Q. You handed this postal card you received from the mail carrier to Mrs. Jones? A. Yes. Q. Did you have a conversation with Mrs. Jones about this card—who it was from? A. Yes. Q. Do you recall what happened to Mrs. Jones that night, if anything,—the night that the postal card was received at your house? A. She went to Missouri Valley, the next day after the postal card came, and stayed all night, and came back the next day."

Each of the questions above quoted was objected to at the time, as being immaterial, irrelevant, and incompetent; and in each instance, the objection was overruled. There is no competent evidence whatever that the card was written by the defendant. Neither this witness nor any other pretends to state a single word of its contents, or the nature or subject of the communication, or, indeed, whether

it contained any communication at all. But from this wholly colorless and meaningless incident, there is sought to be drawn some inference of an adulterous intrigue, because, on the following day, the woman who received the card went to Missouri Valley, the town where it appears she has lived many years, and did not return until a day later. Such a morsel of inconsequential information might conceivably furnish a rich topic of animated discussion for a company of gossips at a quilting bee, but we know of no rule or principle of the law of evidence which entitles it to consideration in the jury room. The objection to the testimony should have been sustained.

III. In cross-examination of the plaintiff as a witness in his own behalf, he was shown an affidavit, dated August 14, 1918, purporting to have been signed and sworn to by him, to the effect that Spencer had never

**3. WITNESSES: cross-examination: unjustifiable latitude.** harmed him or caused him any trouble, and that they had always been and still were friends. Thereafter, the defendant testified as a witness in his own behalf. In his direct examination, the alleged affidavit was not mentioned or referred to, nor were his own family or domestic relations in any manner inquired into. The cross-examination, however, was permitted to proceed as follows, appropriate objections to each question being overruled.

"Q. You have had trouble with your wife, haven't you? A. Well, yes—some. Q. And your wife got a divorce from you on the ground of cruel and inhuman treatment, at this term of court? A. Yes. Q. How many of your friends, Mr. Spencer, do you get to make affidavits that they are your friends, and how many affidavits do you have in your possession from men, saying that they are your friends? A. You never asked me for any affidavits. Q. Just the one man, and he was easily imposed upon, wasn't he? A. He

is the only man I have as a friend?  No—not that I know of."

The right of cross-examination is indispensable to the development of truth upon the witness stand, and the courts will not unduly restrict its exercise; but it has its limits, beyond which it cannot go, without abuse of the privilege.  A clearer case of such abuse can hardly be imagined than is here presented.  The inquiries have no relevance whatever to the direct examination, nor to any fact the truth of which is in issue.  The defendant was, of course, a witness, and therefore subject to impeachment, as such; but this should be accomplished, if at all, in the manner provided by law, and not by insinuation or slur or indirection.

IV.  Many other errors are assigned, some of which are probably well taken; but what we have already said is sufficient to show the necessity of a reversal.  The record, as a whole, is very unsatisfactory, and we are satisfied that the case is one in which the ends of justice will be but served by ordering a new trial.

The judgment of the district court is reversed, and cause remanded for a new trial.—*Reversed.*

LADD, GAYNOR, and STEVENS, JJ., concur.