H. O. Hess, Appellant, v. F. R. Dicks et al., Appellees.

**LANDLORD AND TENANT:** Rent—Payment—Evidence. Evidence
1   held to present a jury question on the issue whether a tenant and
landlord had contracted for the sale and delivery of personal prop-
erty in payment of the rent.

**WITNESSES:** Impeachment—Former Testimony on Retrial. Principle
2   reaffirmed that, upon the retrial of an action, the testimony given
upon the retrial is *the* testimony upon which the cause must be de-
termined, and that the testimony given upon the first trial can be
considered only as impeaching testimony.

*Appeal from Woodbury District Court.*—W. G. Sears, Judge.

October 25, 1921.

Action at law, to recover $840 rent for plaintiff's farm.
The defense was a plea of settlement by sale of personal prop-
erty by defendants to the landlord for the full amount of the
rent, and that the property so conveyed was more than plaintiff's
claim. Defendants asked to recover on their counterclaim for
the difference. Trial to a jury. Verdict and judgment for
defendants for $23.10 on their counterclaim. The plaintiff
appeals.—*Affirmed.*

*Hess & Hess, J. A. Prichard,* and *Milchrist, Scott & Pitkin,*
for appellant.

*H. B. Walling* and *Griffin, Griffin & Griffin,* for appellees.

Preston, J.—The case has been here before. *Hess v. Dicks,*
181 Iowa 342. The general facts are there stated, and will not
be now repeated. The case was tried on a somewhat different

1. LANDLORD AND
TENANT: rent:
payment: evi-
dence.

theory at the last trial. Defendants amended
their answer, after the reversal, and alleged, and
now claim, that there were not two contracts
between the parties, but that it was one entire transaction, in-
cluding the team of horses. The instructions given by the trial
court are not before us on this appeal. We assume that they

were appropriate and applicable to the issues and the theories of the parties. It appears that a part of the property which defendants say they sold to plaintiff in settlement of the rent account—the team of horses—was mortgaged. Appellant contends that defendants had no authority to sell the team. On the other hand, appellees contend that they had the consent of the mortgagee to sell the team and turn it over to plaintiff; and that the mortgage was to be released; and that plaintiff knew of the mortgage, and was to get the team of horses later. The errors assigned are that the court erred in overruling plaintiff's motion for a directed verdict in his favor, and in overruling his motion for new trial. The propositions in the brief points are that, where two or more parties negotiate for the purchase of several items of personal property as an entirety, and it turns out that a portion of the property is incumbered by a mortgage, so that the seller cannot deliver, the proposed purchaser is at liberty to withdraw his proposition; that a sale is not complete if anything is yet to be done by either party before delivery; that the statute prohibits the sale of mortgaged property. It is said by appellant in argument that the errors resolve themselves into a single question, which is, in substance: Conceding the defendants' contention, that they and plaintiff orally agreed upon a settlement of the rent by plaintiff's purchasing the several items of personal property mentioned, was plaintiff bound to the agreement so that he could not withdraw, when it transpired that a material portion of the property was mortgaged? They contend that it was an unaccepted proposition; that Dicks could not sell the team lawfully at the time, etc. Appellant discusses the evidence at some length, and the conflict or variance between the evidence of Dicks given on the trial of this case, and his evidence on a former trial.

It seems to us that counsel treat it more as a question of fact. There is a conflict in the evidence as to the terms of the alleged contract of settlement, and other matters. The several items other than the team, which defendants claim they sold to plaintiff, to apply on the rent, were baled hay, oats, corn in the field, loose hay, etc., in the total amount of $663.10, as claimed by defendants. As we understand the record, there was a delivery of these items to the plaintiff, and an acceptance by

him, and he exercised control thereof, though the hay was not all baled, and the amount of another item was not determined. Under the agreement, as the jury could have found from the evidence, these details were to be ascertained later. Plaintiff assumed control of and gave directions in regard to baling the hay. As we understand it, there is no dispute about the foregoing items. Defendants testified that plaintiff got them all, and it seems that plaintiff did not withdraw, or seek to withdraw, from the arrangement as to these items. It appears that the parties discussed the matter two or three times, prior to January 17, 1916, on which date occurred the last conversation between them. It appears that a son of one of the defendants, which defendant conducted the negotiations, was seriously sick, so that such defendant had to take his son away at once; and defendants' evidence tends to show that this was at the suggestion of the plaintiff, as well as of the others. This defendant was gone about eight days. In the meantime, plaintiff brought suit for the full amount, and caused to be issued a landlord's attachment.

The controversy, then, is in regard to the team of horses, and as to whether defendant had a right to sell the team and apply the agreed price of $200 on the rent, which price, with the items before referred to, would equal or exceed plaintiff's claim. The property before described was on the premises owned by plaintiff and rented by him to the defendants. The team was on the Hiller farm, some four miles distant, which farm was being conducted by defendant F. R. Dicks. It is conceded that there was a mortgage on the team, which, at the date of the alleged settlement, had not been released of record. Defendants' evidence is to the effect that plaintiff was informed of the mortgage, and that it would have to be adjusted; and that plaintiff agreed to get the team later, when that detail and some of the details as to the other property were determined. Defendants' evidence tends to show that plaintiff assented to this, and agreed to account to defendants if, when the hay, oats, etc., were measured up, and the amounts were determined, it should be found that the property amounted to more than plaintiff's claim.

It is contended by appellees that they had a right to sell the team, and that the sale was legal, because the mortgagee gave

Dicks permission to sell the team to plaintiff, and consented to such sale, and agreed that said mortgagee would thereafter release the mortgage. It is not claimed that such permission or consent was in writing. We do not understand the bank (mortgagee) to be making any claim to the team, or that it ever has done so since the alleged agreement of settlement. A brief summary of the testimony of some of the witnesses in regard to the team and defendants' right to sell it, though mortgaged, will be stated. F. R. Dicks testifies that, when he made the final arrangement, plaintiff and Creek, who was talking of renting plaintiff's farm, under an arrangement between Creek and plaintiff, in regard to plaintiff's assisting Creek in the purchase of apparatus to carry on the farm, came to the Hiller place, about the middle of January, and plaintiff said he would like to have the rent fixed up. They then discussed the other property. The team of horses was standing in the barn, and Dicks told plaintiff he could have the horses for $200, and plaintiff asked Creek if that suited him, and Creek said it was satisfactory. Creek said something about Dicks' furnishing a better pair of halters than those on the horses. Dicks told them that he had to make an adjustment with the Anthon bank, which he would do before they got the hay baled. Dicks says he did make the adjustment with the bank; says he was ready to deliver the team to plaintiff; says he told plaintiff that plaintiff could have the whole business,—the corn, the hay, the stock, and the team,—so that Dicks could get out, and that he would give possession of the farm and the team of horses. He says he told plaintiff what he would take for the corn, etc.; that he would have to make an adjustment in regard to the team; that the bank had a mortgage on them, but that the bank told Dicks it would release it. Dicks told plaintiff that they had to get the hay baled, and he would then have the mortgage released. He testifies that plaintiff then said:

"All right, you go ahead and make the adjustments, and we will get them any time after that."

Dicks says the arrangement was made at his home where he lived, on the Hiller place.

"Q. Now, at the time, you had not got permission of the bank who had the mortgage on the horses, to sell? A. He said

he would release, but it had not been released at that time. The president of the bank told me he would release it. I had not secured any signature in writing; I just had the consent of the banker, or his word, that he would release if I did sell it. I had a conversation with the banker before my conversation with Mr. Hess, about releasing that team.''

Then follow questions on cross-examination as to testimony given by Dicks at the former trial, which we understand appellant to claim was somewhat at variance, at some points, with

2. WITNESSES: impeachment: former testimony on retrial.

his testimony on the last trial. But we have held that the testimony on the last trial was the testimony, and the other simply impeaching. The weight of his testimony, notwithstanding the alleged impeachment, was for the jury. *State v. Carpenter,* 124 Iowa 5, 11. Dicks further testifies, on recall:

''Creek came down about 9 o'clock in the morning. After I talked with Creek, I saw the president of the bank, Mr. Heidelberg, regarding the release of the mortgage. Then Mr. Hess came out to close the deal. I went to Heidelberg's bank, and told him I thought I had a chance to settle with Hess by selling him the crop and team. Mr. Heidelberg or his bank had a mortgage on the team, and I asked, in case I did sell, if he would release, and he said he would.''

Creek testifies:

''I am acquainted with Hess; had a talk with him in regard to renting his farm where Ralph Dicks lived; talked to him in regard to this deal with Dicks, regarding the purchase of his corn, hay, and horses. We were going halvers on the stuff, and buying it from Dicks. I went down to Dicks' to look at the team; found he wanted $200. Went back and told Hess, and he agreed with me. Said we better go down and cinch this team. We went down and looked at the team.''

He then testified in regard to different halters, and that Dicks said he would have to make an adjustment. Dicks said there was a little against them, and he would have to release them, and that:

''When the hay and corn was measured up, we could take the stuff altogether. I did not afterwards carry out the deal of renting the farm.''

Heidelberg testifies:

"About the middle of January, 1916, Mr. Dicks came to me, and asked if I would release a couple of horses we had a mortgage on. He thought he wanted to dispose of them to Mr. Hess. I told him I would. I think I did, after that, but I did not at that time; but I gave him permission to dispose of the horses."

We have not attempted to give the details of all the evidence. Other witnesses give testimony having a bearing, but perhaps not so directly. No witnesses testified on behalf of plaintiff, except the plaintiff himself, who testified in chief. His testimony is very brief. He testifies only to the making of the lease, and that he was paid only $9.00 on the rent, by two loads of straw received from defendant; that he had not received any other payment except the straw; and that the remainder was unpaid. He does not deny the evidence given by Dicks and the other witnesses as to the conversations.

It is conceded by appellees that the contract of settlement was evidently the result of several conversations, but they insist that it was all one transaction, containing one subject-matter: that is, the sale by F. R. Dicks of the personal property to plaintiff, to apply the same on the rent; the overplus to be returned to Dicks. Under the pleadings and evidence as now presented, we think the jury could properly have so found. Appellees cite the opinion on the former appeal, to the proposition that actual, physical possession of property is not always necessary to constitute full delivery, and *Kletzing v. Armstrong,* 119 Iowa 505, to the proposition that, under the statute, written consent of the mortgagee to sell mortgaged property is not always necessary, even in criminal cases. They also cite *Thompson v. Frakes,* 112 Iowa 585, to the point that the question of intent is important in determining whether an agreement was, in fact, entered into between the parties. Other cases are cited, as holding that the existence and terms of an oral contract are questions of fact for the jury, where the evidence is conflicting.

It is further contended by defendants that a purchaser of chattels cannot escape the terms of his contract, on the ground that the chattels were mortgaged, when it appears that the mortgagee consented to a sale of the mortgaged property by the mortgagor, and gave him permission to sell the same; and that in

such case the mortgagee is held to waive his lien, and the purchaser takes title, free from the mortgage. They cite on this point *Hoyt v. Clemans,* 167 Iowa 330; *Bank of Hinton v. Swan,* 156 Iowa 715; *Farmer v. Bank,* 130 Iowa 469. Also, *Livingston v. Heck,* 122 Iowa 74, and *Livingston v. Stevens,* 122 Iowa 62, to the point that the waiver of the lien by the mortgagee is in the nature of an estoppel, in favor of the purchaser.

As before stated, the bank made no further claim to the team under its mortgage, after they gave Dicks permission to sell it to plaintiff and consented to such sale. We have no means of knowing what the trial court instructed the jury in regard to the question of the mortgagee's consent and the effect of it, and as to the question of delivery and the other matters discussed; but we think, under the evidence, that these matters, in so far as the facts are concerned, were for the determination of the jury.

The judgment is—*Affirmed.*

Evans, C. J., Weaver and De Graff, JJ., concur.