IOLA LYONS DEDMAN, Appellee, v. RALPH E. MCKINLEY et al., Appellants.

No. 47082.

OCTOBER 14, 1947.

F. T. Van Liew, Paul Hewitt, Harvey Bogenrief, and Hextell & Beving, all of Des Moines, for appellants.

Charles P. Howard, of Des Moines, for appellee.

HAYS, J.—On February 10, 1945, plaintiff was stopped near the Locust Street Bridge in Des Moines, and questioned by the defendants, who were members of the Des Moines Police Department. She was then taken to police headquarters for further questioning and released. No charges were filed. This action is for false imprisonment, and from a verdict and judgment in plaintiff's favor defendants appeal.

Appellee in her petition alleges that while walking along the streets of Des Moines with one David Davies, in a quiet and orderly manner, she was arrested and deprived of her liberty by the appellants; that she suffered humiliation and embarrassment, and asked damages. Appellants, by way of answer, and in Division IV thereof, and by way of justification, assert that appellee and said Davies were engaged in the commission of a public offense in their presence; that said offense consisted in appellee, a child under eighteen years of age, violating Ordinance No. 4649, of the city of Des Moines. This ordinance makes it a misdemeanor to remain in a public park after 10:30 p.m. without special permission. Appellee by reply denies being in a park and sets forth sections 75-11 and 75-21, chapter 75, of the Municipal Code of Des Moines, 1942, which provide that no one shall enter the parks contrary to posted notices, which shall be posted in conspicuous places therein; and alleges that no such notices were posted.

I. After the close of the testimony, the court, upon motion of appellee, struck from the answer said Division IV and all reference to the city ordinance violation was withdrawn from the jury. This is alleged as appellants' first assignment of error.

The record shows that the area along the riverbank, both north and south of the Locust Street Bridge, is a part of the Des Moines city park system; that the portion under the bridge bears a bad reputation, as a place where people go for immoral purposes; that at the west end of the bridge, on both the north

and south side, there is a stairway going down under the bridge.

On the evening of February 10, 1945, sometime after 9:30 p.m., appellee, in the company of David Davies, was walking east on Locust Street. As they approached Third Street they were observed by the appellants, who were on patrol duty and seated in their patrol car, parked at Third and Locust. They immediately drove their car to the west end of the Locust Street Bridge and stopped. As appellee and Davies reached the bridge, walking east on the south side of Locust Street, they started across the street to the north side of the bridge. There is a dispute in the record as to just where appellee and her escort were when the appellants stopped them and started asking questions. Appellants claim they had reached the north side of the bridge and had taken a step down the stairway leading under the bridge. Appellee claims she was still in the street when stopped by them. Appellant McKinley at this time had left the car and approached them. Appellant Simmons states that when McKinley called to them they were on the sidewalk. McKinley states that when he stopped them they were stepping onto the areaway at the top of the steps. It is not disputed but that McKinley took appellee by the arm and ordered her into the patrol car.

The record is also in dispute as to the time. Appellants claim they stopped appellee at 10:30 p.m., while appellee claims it was shortly after 10 p.m. The record at the police headquarters shows that appellants at 10:20 p.m. radioed headquarters they were bringing in a party for investigation. The record is clear that this call referred to appellee.

At the time appellee was stopped on the bridge she stated her age as seventeen and, as she says, immediately said, no, eighteen. The record bears out this claim. At no time was it ever mentioned to her that she was in a park, contrary to the city ordinance, nor does it appear, in any satisfactory manner, that such a report was made to the officer in charge at headquarters.

Appellants placed the ordinance in evidence. They called as a witness Jerome, custodian of the areaway in question, who stated he had not given appellee permission to be in the park

after 10:30 p.m., and he also stated he did not issue permits. There is no showing that his area was posted as park property.

Based upon the foregoing record, the court withdrew from the jury all question as to violation of the ordinance. Appellants, in asserting error, rely upon the well-established rule that where there is a conflict in testimony it is for the jury to decide. That this is the general rule is not disputed. However, it is also the rule that where the evidence is such that all reasonable men must draw the same conclusion, then these questions become of law for the court. Gowing v. Henry Field Co., 225 Iowa 729, 281 N. W. 281; Wilson v. Findley, 223 Iowa 1281, 275 N. W. 47; Ross v. Automobile Ins. Co., 228 Iowa 668, 292 N. W. 813; Donahoe v. Denman, 223 Iowa 1273, 275 N. W. 154. Under this record, giving to appellants' testimony upon this claimed defense of justification every favorable construction possible, the record is of such conclusive character, to the effect that there was no question of ordinance violation involved, that a verdict so finding would have to be set aside. There is no error in the striking of this issue and withdrawing same from the jury.

II. Appellants' second assignment of error deals with refusal of the trial court to instruct the jury that it should not consider the question of race, and of misconduct on part of appellee's attorney.

(1) The record shows appellee's escort, David Davies, was colored. It also shows that appellee, while of light complexion, is also a member of the colored race. It was alleged by appellee in her petition that the sole cause of the arrest was the mistaken opinion that she was a white girl and in the company of a negro. The record shows that she was questioned at the police headquarters as to her nationality and then released. Upon motion of appellants, after the close of the testimony, the court withdrew from the jury all allegations in appellee's pleadings dealing with the question of race. The requested instruction was to the effect that there was no question involved of civil rights and any question as to the appellee being white should not be considered by the jury. There was no motion to withdraw from the jury the testimony of the various witnesses

relative to questions asked as to appellee's race. The question of civil rights was not in issue as such, although there was the question of race and color as being involved in the making of the arrest. The court properly overruled appellants' requested instruction.

(2) Error is also predicated upon alleged misconduct of appellee's attorney in referring to the race question. We have examined the record and find no error on account thereof. Appellee's theory of the case was based upon this racial question. Such question was raised as an issue in the pleadings and so remained until the close of all the testimony. Appellee had the right to present her theory of the case, so long as it remained in issue. Under the record we do not find misconduct on the part of her attorney.

III. Appellants' third assignment of error is the court's refusal to instruct the jury that police officers may without legal process detain children alleged to be delinquent pending investigation thereof. The case was submitted to the jury upon appellants' theory that it is unlawful for anyone to cause any child, under eighteen years of age, to violate any law of the state, or to permit or encourage any child, under eighteen years of age, to be guilty of vicious or immoral conduct. They testified that they thought, at the time they stopped appellee, that she was going into an area of disrepute for immoral purposes. The court instructed that police officers may, without legal process, detain one for a reasonable time pending investigation of his conduct, when such officers believe or have reasonable grounds to believe such person is under eighteen years and is engaged or about to engage in the commission of an unlawful act.

The requested instruction and the given instruction differ only in that the court made the right to restrain, without legal process, dependent upon the good faith of the officers and the reasonableness of their belief that a public offense was being or about to be committed. Without passing upon the correctness of the instruction given, to which no exceptions were taken by appellants, we merely hold that the instruction requested does not correctly state the law and that the court in the instruction

given, gave them all that, if not more than, they were entitled to, on the issue there involved.

IV. Appellants' next assignment of error is that the verdict was excessive and based upon passion and prejudice.

As stated by appellants in their brief and argument, the test as to whether or not a verdict should be set aside and a new trial granted is whether or not it is so excessive as to shock the conscience, citing In re Estate of Hollis, 235 Iowa 753, 16 N. W. 2d 599; Johnson v. City of Sioux City, 220 Iowa 66, 261 N. W. 536.

The record shows appellee, at the time she was taken into custody, was past eighteen years of age; a student at Drake University, and an active leader in church and local community affairs. She had never before been in trouble and was, without question, a girl of refinement and culture. She testified to her humiliation and embarrassment and that on account thereof she left school and returned to her home in Texas. The jury awarded her a recovery of $650. This, according to appellants, is excessive for fifteen minutes' courteous detention of a minor who appears to be delinquent. There is conflict in the record as to how courteous the detention was, and also as to any apparent delinquency, and it was for the jury to say as to how she was affected thereby. We take judicial notice of the fact that the purchasing power of the dollar has been materially reduced in recent years, and under the entire record, are not inclined to say such an award shows abuse by the jury of its duty to fix and determine fair damages. While appellants cite many cases where awards have been held excessive, such cases are of little help as each one must stand on its own facts.

V. Appellants urge further error upon the part of the trial court in admission of testimony.

The record shows that appellee made her home with her brother-in-law, the Reverend J. J. Hawkins. Over objection, the court allowed him to testify as to her condition when she returned home after being released by the police, and in general as to what she said happened to her. The exact time of this conversation, with relation to the detention at police headquar-

ters, does not definitely appear but it was clearly within a matter of fifteen to thirty minutes thereafter. The record is clear that these statements to Hawkins by appellee were made under his questioning of her. We think the testimony was competent as part of the res gestae and clearly within the rule announced by us in the case of Aldine Tr. Co. v. National Ben. Acc. Assn., 222 Iowa 20, 268 N. W. 507, where we say:

"The all-essential test is whether they (1) relate to, and are explanatory of, the principal transaction, and (2) are made under such circumstances as to reasonably show that they are spontaneous and not the result of deliberation or design."

See, also, Page v. City of Osceola, 232 Iowa 1126, 5 N. W. 2d 593; Case v. Case, 212 Iowa 1213, 238 N. W. 85.

VI. Error is also urged in that the court required appellant McKinley to testify on cross-examination to matters pertaining to the race and color of appellee. Also, that David Davies was allowed to testify as to conversations between witness and appellants. In this we find no error.

(1) It was appellee's claim throughout the case that no law had been violated by her and that the cause of the arrest was due to the belief on the part of appellants that she was a white person. It was the claim of appellants that no questions of race were asked. The specific question and answer involved was:

"Q. When you were questioned by these officers did they ask you about Iola's race? * * * Objected to as incompetent, immaterial and irrelevant, and an attempt to inject the race question into this case and prejudicial. The Court: Overruled. A. Eventually they asked me what race she belonged to."

While this objection might well have been sustained, we find no prejudicial error, especially in view of the testimony of the police inspector that he inquired as to her race.

(2) Appellant McKinley upon cross-examination was questioned as to what conversation he had with appellee and as to what was said regarding her race and color. In this there was no error.

We find no error in the record and the judgment of the trial court should be and is affirmed.—Affirmed.

OLIVER, C. J., and BLISS, HALE, GARFIELD, SMITH, MANTZ, and MULRONEY, JJ., concur.