Ronald W. McVay et al., Appellees, v. Albert Carpe et al., Appellants.

No. 47097.

NOVEMBER 11, 1947.

Bert Hextell, C. I. McNutt, and Don Beving, all of Des Moines, for appellants.

Tesdell & Tesdell, of Des Moines, for appellees.

MANTZ, J.—This action was brought by the plaintiffs, Ronald W. McVay and Herbert Kerkman against defendants Albert Carpe and George C. Cessna, and therein plaintiffs asked for damages for false arrest and imprisonment at the hands of the defendants, alleging that they had been subjected to physical and mental discomfiture, embarrassment, humiliation, and loss of social standing, and, in the case of McVay, loss of employment, alleging that defendants had no reasonable or legal grounds for arrest and that in so doing defendants acted illegally.

The defendants, admitting the arrest, allege that in so doing they acted within their legal rights and claimed that they had reasonable grounds for believing that the plaintiffs

had been participating in various breakings and enterings in the city of Des Moines, and further, that plaintiff McVay was arrested for violating a city ordinance requiring the drivers of automobiles to stop their vehicles at a stop sign then existing at the intersection of Douglas and Beaver Avenues in said city.

The cause was tried to the jury and a verdict of $1,500 was rendered in favor of each plaintiff and against each defendant. A motion for a new trial was made and this was overruled on condition that each plaintiff file a remittitur for all amounts of the judgment in excess of the sum of $1,000. Such remittiturs were filed as required. Defendants have appealed.

Hereinafter we will refer to plaintiffs as appellees and to the defendants as appellants. In the original pleadings there was a third defendant, one Marasco, but the case was dismissed as to him and he is not involved in this appeal.

I. During the spring of 1946 there had been a series of breakings and enterings of various establishments, principally service stations in the northwestern part of the city of Des Moines, and the police department had assigned detectives to cover that area with the purpose of apprehending the offenders. The two appellants were among those so assigned. On the night of June 1, 1946, appellee McVay of Des Moines, and a visiting brother-in-law, appellee Herbert Kerkman, a resident of Bridgewater, Iowa, were proceeding to McVay's home, located west of the intersection of Beaver and Douglas Avenues in Des Moines. McVay was a returned service man, was married, with a wife and two children, and was then employed at the Walgreen Drug Store of Des Moines. Shortly after the McVay vehicle had proceeded west on Douglas Avenue from its intersection with Beaver Avenue, the appellants stopped the McVay car and informed the occupants they were under arrest. This arrest took place between two and three o'clock in the morning. Between the time of the closing of the Walgreen store and that of the arrest appellees had taken lunch, gone to a movie and also a night club located on Keosauqua Way, a main thoroughfare into Des Moines from the northwest. After the arrest they (appellees) were questioned briefly, their names and addresses taken, the car was searched and both were taken to the police station and

placed in separate cells. Both appellees state that when they were arrested they inquired the cause but received no information save a reply, "you will soon find out." Something was also said to the effect that the McVay automobile had run a stop sign at the junction of Beaver and Douglas. At the police station a bulletin of arrest was made for each appellee. Said bulletin gave data as to name of person, residence, sex, nationality, age, time of arrest, officer making arrest, etc. These bulletins are part of the permanent records of the police department. On each bulletin under the head of "charges" is found the notation, "Investigation Dets." Under the head of "remarks" are words, "See bulletin No. 3350." This bulletin referred to McVay; bulletin No. 3351 referred to Kirkman (Kerkman) and both gave practically the same information given in the bulletins of arrest. The only data therein showing why either appellee was held was "investigation." All these records show that the arrests were made by appellants at 3:30 a. m. on June 1, 1946. They show that both were released at 2 p. m. On the McVay bulletin under the heading of "remarks" we find the following:

"This man has been running around with John Baker and John Carney. They were out to Val Air together. Might do for some of B. E. This fellow works at Walgreen's Store. Has a Chevrolet Car on Lot # 1-1495 Iowa. Has an extra set of hub caps in his car. [Signed] Castelline."

Castelline under the record is inspector of detectives of the Des Moines Police Department. Castelline testified that they examined John Baker and John Carney (then in jail) and that neither of them involved either McVay or Kerkman and he released them. Appellant Carpe testified as to the arrest. On cross-examination he said:

"We just had them in for investigation. We believed they had committed the crimes, but had to have further investigation on it. That I never filed charges against them. If all we wanted him for was running through the boulevard, the proper procedure was to take the name of his car, license number, and give him a summons to appear the next morning at nine o'clock.

In our department, take him down to the jail. We wanted him for something besides running through the boulevard. I didn't give him a summons.''

After McVay was released he was discharged from his employment at Walgreen's. He testified he talked to the manager, a Mr. Hayes and was told that someone else was in his place. We quote: ''He said also, due to the fact that I was in jail if it got to the papers he didn't want the advertisement for the store.'' McVay further stated that he was out of a job for a month and at the time of the trial was a student in Drake University and worked part time in another drug store. It was not until the next day that any information was given appellees why they had been arrested and McVay was told he had been seen in the company of John Carney. The latter had worked at the Walgreen store during a part of the time McVay worked there. Kerkman was not acquainted with either Carney or Baker.

■ II. The first division of appellants' brief sets out three claimed errors. Summed up they are as follows:

(1) That the court erred in refusing to direct a verdict for appellants when appellees rested; also at the close of taking evidence.

(2) That the court erred in overruling the motion to withdraw from the jury the issue of false arrest as to appellee McVay.

(3) That the court erred in overruling appellants' motion for a directed verdict, and to withdraw from the jury the issue as to the arrest of McVay.

Taking up the first paragraph of Division I of the brief and argument of appellants we hold that there was no error in the ruling of the court when appellees rested and when all the evidence was in. The motion made when appellees rested was directed toward both appellees. As the record showed an arrest without a warrant and the incarceration of appellees, they had made out a case for the jury. The burden would then be cast upon appellants to justify their act in arresting appellees. As McVay was the driver of the automobile, certainly it could not be claimed that appellee Kerkman was liable for arrest in failing to observe the stop sign. When the evidence

was all in there remained the issue as to whether the appellants had shown sufficient evidence to justify the arrest—in other words, that became a question of fact for the jury; and such being the record the motion to direct a verdict for appellants was properly overruled.

We will next consider the motion as directed to appellee McVay, the driver of the automobile at the time of the arrest. Kerkman was with McVay in the car. Both were arrested without warrant, taken to the police station and placed in jail. No charges were filed against either of them and they were released about twelve hours later. At the trial below, appellants claimed that McVay was arrested for failing to stop at a stop sign at the intersection of Douglas and Beaver Avenues in Des Moines. However, no charge for such claimed offense was ever filed against McVay, driver of the automobile. Evidently Kerkman was arrested and taken to jail for the reason that he was found in McVay's company. Nowhere is there made any claim that he was even remotely connected with any of the individuals who were under suspicion for the breakings and enterings. We think it is clear from the record that the arrests were not made because McVay violated the stop sign at that point. Carpe, one of the arresting officers, stated as a witness that that was not the real reason for McVay's arrest. We think it is equally clear that both appellees were arrested on suspicion that they had participated in various breakings and enterings about that time and in that neighborhood.

Regarding the claim that McVay failed to obey the stop sign, thereby committing a public offense in the presence of the officers, giving them a legal right to arrest him, the court by instruction dealt with such claim as follows:

"If you find by a preponderance of the evidence that plaintiff McVay, in the presence of the defendants drove his automobile through said stop sign without first stopping, then the defendants had the right, under the law, to arrest said plaintiff and take him to jail and they would not be liable in damages for so doing."

Appellants argue that McVay at the time they arrested him admitted that he did not stop at the stop sign, thereby admitting that he had committed a public offense and therefore could not claim that he was falsely arrested. Appellants claim that such admission made it conclusive that a public offense had been committed by McVay in the presence of appellants. We do not agree with appellants upon this claim. McVay, as a witness, at one point says that he did stop. Also, that he would not swear that he made a dead stop—he simply declared that he stopped. He testified: "When we approached the crossing, the crossing of Beaver and Douglas, we stopped, shifted into low, and turned west on Douglas." On cross-examination he said:

"I think both Mr. Kerkman and myself asked them [appellants] why we were being arrested and Cessna asked me how come I went through the stop sign. I told him I slowed down and shifted gears. Mr. Cessna said, 'You realize you *could be taken in for that.*'" (Italics supplied.)

Kerkman corroborates McVay in saying that McVay slowed down and shifted into low. When they asked why they were being arrested they were told "you will soon find out."

Under the record we think that the court properly submitted to the jury the issue as to whether or not McVay failed to heed the stop sign; also, the question of whether the arrest was made for that reason.

In the same instruction from which the quotation above was taken, the court qualified the same by adding the following:

"If you believe that the defendants arrested the plaintiff McVay not for failing to stop before he went through the stop sign, but because they suspected him of having committed the crime of breaking and entering, then said arrest * * * would be false, unless you further find by a preponderance of the evidence that a crime of breaking and entering had been committed and that they, the defendants had reasonable grounds to believe this plaintiff had committed it."

From the part of the instruction just quoted it is evident that the court had in mind that the real reason for arresting McVay might not have been for the alleged failure to heed the

stop sign but was because of suspicion that he might have been involved in other crimes—breaking and entering. The court very properly left that matter to the jury.

The testimony of a witness is to be judged as a whole even if it is contradictory and conflicting. It is for the jury to pass upon under proper instruction. Mohn v. Mohn, 181 Iowa 119, 164 N. W. 341; Daggy v. Miller, 180 Iowa 1146, 162 N. W. 854; Holden v. Hanner, 231 Iowa 468, 1 N. W. 2d 671; Thompson v. Butler, 223 Iowa 1085, 274 N. W. 110; IX Wigmore on Evidence, Third Ed., sections 2588-2595.

In support of the errors claimed in Division I of their brief and argument, appellants cite many cases. We have examined these cases but in the light of the present record do not see their application. There was a conflict in the evidence as to whether McVay violated the law at the stop sign; also, as to whether appellants had reasonable cause to believe that the appellees had been involved in the breakings and enterings. The court gave the jury proper instructions on those matters and we hold there was no error in refusing to grant appellants' motion to direct a verdict for appellants.

■ III. Another error urged by appellants is that the court erred in denying them the right to open and close the argument. Under the record we hold that the court did not err. Rule 195, Rules of Civil Procedure, provides that the party having the burden of proof is entitled to the opening and closing argument. In instructions the court advised the jury that the appellees had been arrested without a warrant and imprisoned. The court instructed that the arrest of appellees was without warrant and the burden was upon appellants to establish by a preponderance of the evidence that appellants were entitled to make such arrest. Thus the court advised the jury that under the circumstances of the arrest the appellants had the burden of showing justification for such arrest.

The court in the instructions placed upon appellees the burden of establishing their case by a preponderance of the evidence. Appellees were required to show that the arrest was false and in addition, their damages. The damages, of course, were unliquidated. The appellants seem to argue that they

assumed the burden of proof as to the issue and were entitled to open and close the argument. One of the issues raised by the pleadings was the damages, if any, appellees had suffered. Consequently, under the record, the appellees had a right to open and close the argument. Shaffer v. Des Moines Coal & Hay Co., 122 Iowa 233, 98 N. W. 111.

In the early case of Goodpaster v. Voris, 8 (Clarke) Iowa 334, 74 Am. Dec. 313, defendant claimed the right to open and close the argument. It was a suit on a note. Defendant admitted making the note but pleaded a setoff for a claim for damages. This court, in its opinion, held that the defendant was not entitled to open and close the argument as his answer was qualified in that it did not admit plaintiff's cause of action. In the present case by their answer appellants deny specifically appellees' allegation of claim of damages. Here, we have appellants admitting the false arrest and denying the damages. The appellees were still required to go forth and prove the issues not admitted.

██ This court has held on many occasions that a large degree of discretion is lodged in the trial court as to which side has the opening and closing argument. Woodward v. Laverty, 14 Iowa 381. In White v. Adams, 77 Iowa 295, 297, 42 N. W. 199, 200, this court said:

"The question as to who had the burden of proof is properly a matter of practice, and the ruling of the court thereon will not be reviewed, unless there is evidence of an abuse of discretion."

See, also, Oxtoby v. Henley, 112 Iowa 697, 84 N. W. 942. In the case of O'Conner v. Kleiman, 143 Iowa 435, 439, 121 N. W. 1088, 1089, this court said:

"As a rule, large discretion must be permitted on such a question to the trial court, and we will not reverse on such ground, unless an abuse of discretion and prejudice appear."

See, also, Kayser v. Occidental L. Ins. Co., 234 Iowa 310, 12 N. W. 2d 582; McLaughlin-Gormley-King Co. v. Hauser, 200 Iowa 210, 202 N. W. 574; Farmer v. Norton, 129 Iowa 88, 105

N. W. 371; Fenton v. Iowa State Trav. Men's Assn., 139 Iowa 166, 117 N. W. 251. In Schipfer v. Stone, 206 Iowa 328, 218 N. W. 568, 219 N. W. 933, this court said it was erroneous to refuse to one having the burden of proof the right to open and close the argument, but such refusal was not necessarily reversible error. In the case of Shaffer v. Des Moines Coal & Hay Co., supra, this court said at page 236 of 122 Iowa, page 112 of 98 N. W.:

"If the burden as to one issue is on the plaintiff, he is entitled to the opening and closing, although such burden as to half dozen other issues may rest upon the defendant."

In the present case, appellees alleged and were required to prove their damages. Appellants specifically denied such damages. The trial court in the exercise of its discretion awarded appellees the right to open and close the argument. The ruling of the trial court was right.

IV. The next claimed error of the appellants is that the court erred in instructing the jury that appellants must prove by a preponderance of the evidence that McVay drove through the stop sign without stopping. They claim that McVay admitted such claim. We have already held that the language of McVay on that matter was not such an admission as to make it conclusive; as we have heretofore said the evidence was in conflict and it was proper to give the instruction complained of and thereby permit the jury to pass thereon.

V. Appellants argue that the verdict of the jury is not sustained by sufficient evidence and also that it was grossly excessive and apparently the result of passion and prejudice on the part of the jury. Later, following a ruling of the court a remittitur of $500 was filed, thus leaving the judgment at $1,000 against each defendant.

We think that there is ample evidence to sustain the verdict and further, that the amount to which it was reduced was not excessive. Neither does it indicate passion or prejudice.

Under the record these two men were proceeding peacefully homeward. No offense had been committed, save the possible one that McVay had violated a stop sign ordinance. How-

ever, the verdict of the jury in effect sustained his claim as to such offense. The evidence shows that these two men were arrested without warrant and without being apprised of the reason for such arrest; their inquiry as to the reason for such arrest elicited the statement, "you will soon find out." They were taken to the jail, were there booked and unceremoniously put in a cell. McVay was put in what was termed the "bull pen" along with about a dozen others, mostly drunks. His request to inform his family was ignored. The cell was filthy and unsanitary. There were plain cots for sleeping with no mattresses but with wide slats. Some of the drunks were sick and had vomited. No chance to rest or sleep. The toilet was dirty. He stayed there until 7:30 the next morning when he was taken out and questioned as to his acquaintance with the fellow, Johnny Carney. Said he was worried about his family, and the notoriety arising from being jailed. He lost his job and for a time was without employment.

When Kerkman was at the police station attention was called to the fact that he was limping and he stated he had a sore leg. He had recently returned from Rochester following an operation. Someone present said, "Take him upstairs to one of the inner spring mattresses." Kerkman thinks it was appellant Cessna who gave that direction. He was put into a separate cell; the bed had steel slats; no mattresses, blankets, quilts or pillows. He testified that for breakfast he had a cup of black coffee and a roll—no butter. These were shoved in through dusty bars. Could not eat the noon lunch. "No officer, either before or after being put in the cell, talked to me as to why I was in. Refused to let me phone my folks. I wanted to phone the sheriff of Cass County, or to a lawyer but was not allowed to. Did not sleep either night or day—was nervous. Think such had ill effects on my leg."

McVay finally used a burnt match to write a note to his lawyer and gave it to one who was being discharged. Soon after the lawyer came he was discharged.

 Persons bringing action for false imprisonment may show the condition of the jail—the filth and unsanitary conditions. Fox v. McCurnin, 205 Iowa 752, 218 N. W. 499.

■ Damages for mental pain and suffering under the rule followed in this state are treated as actual, not punitive. Young v. Gormley, 120 Iowa 372, 94 N. W. 922.

As to the question of whether a verdict is excessive see Gadsden General Hospital v. Hamilton, 212 Ala. 531, 103 So. 553, 40 A. L. R. 294. In the Gadsden case the complainant had been unlawfully detained about twelve hours. Held, that a verdict of $1,500 was not excessive. In an annotation to such case (40 A. L. R. 294, 298) the headnote is as follows:

"The amount of damages to be awarded in an action for false imprisonment is a question for the jury; and the general rule is that their verdict will not be disturbed on the ground of excessiveness unless it is so flagrantly large as to evince passion, partiality, or corruption." Citing cases from many jurisdictions, including the case of Young v. Gormley, supra.

In the last-cited case a verdict for $1,500 for false imprisonment was held not excessive. 35 C. J. S., False Imprisonment, section 68. See, also, Noyes v. Des Moines Club, 186 Iowa 378, 170 N. W. 461, 3 A. L. R. 605; Stewart v. Feeley, 118 Iowa 524, 92 N. W. 670; Holmes v. Blyler, 80 Iowa 365, 45 N. W. 756.

■ Under the record the jury would have a right to conclude that the illegal arrest and the circumstances under which it was made, the jail surroundings, the humiliation, the mental pain and suffering, embarrassment, notoriety, and the permanent police record, were all proper items to consider in arriving at their verdict. We hold that it was amply supported by the record and was not excessive. We find no reversible error in the record and the judgment of the trial court is affirmed.—Affirmed.

OLIVER, C. J., and BLISS, HALE, GARFIELD, SMITH, MULRONEY, and HAYS, JJ., concur.