Bernadine Jettre, administratrix of estate of Orville Jettre, appellee, v. William J. Healy, administrator of estate of Joseph C. Healy, et al., appellants.

No. 48363.

(Reported in 60 N.W.2d 541)

OCTOBER 20, 1953.

REHEARING DENIED DECEMBER 18, 1953.

Andrew Bell, Laub Block and Page & Nash, all of Denison, for appellants.

Edson, Edson & Hamilton and C. Wendell Pendleton, all of Storm Lake, and E. A. Raun, of Denison, for appellee.

LARSON, J.—In an action for damages on account of the death of plaintiff's decedent as a result of a collision between a

gravel truck operated by plaintiff's decedent and a Chevrolet automobile owned and operated by defendant's decedent, the jury returned a verdict for plaintiff in the sum of $20,000. Defendant appealed upon the overruling of a motion for a new trial by the trial court. We shall refer to the parties as plaintiff and defendant herein.

Defendant assigns three errors as a basis for reversal, two of which relate to the credibility of a witness, and the third to the amount of damages. Defendant also claims error by the trial court for refusing a new trial upon these grounds.

Briefly, the facts disclosed by the record are as follows:

At an intersection of Crawford County Road K, which is a gravel north-and-south road, about 24 feet wide, and an unimproved, undesignated east-and-west road, some five or six miles north of Vail, Iowa, the gravel truck operated by plaintiff's decedent collided with a Chevrolet automobile driven by defendant's decedent. Both drivers were alone and were instantly killed. The intersection was at the bottom of two hills, the crest of which toward the south was some three blocks, and toward the west was a little less distant, but not as steep. There was a stop sign on the east-west road west of the intersection, and most of this dispute centers on whether or not defendant's decedent stopped before entering the intersection where the accident occurred. There was one eyewitness, Godfrey Preuss, a farmer residing on a farm, the dwelling of which is some 20 rods north and east of the intersection. It appears, according to his testimony, that he and Mrs. Preuss were cleaning or fixing the family car about 5 o'clock p.m. on the 27th of August, 1951, when his attention was called to the approaching vehicles; that he observed the car driven by defendant's decedent first, and later the truck driven by plaintiff's decedent; that he saw them come together, turn over, and land in the ditch north and east of the intersection; that the defendant's decedent did not stop at the stop sign, was driving about 15 or 20 miles per hour when entering the intersection, and that the truck was going about 50 miles per hour until just before the crash when its brakes were applied. Various pictures were received in evidence by stipulation showing the intersection and approaches from various angles. It was testimony concerning the observa-

tion of witness Preuss that defendant complains of and assigns one claim of error. Plaintiff's decedent, thirty years of age, was employed as a truck driver and equipment man, was married, and had one child. Defendant's decedent was a retired farmer and a bachelor sixty-two years of age.

I. Defendant contends that the verdict was the result of false testimony on a material matter by the eyewitness, Preuss, knowingly used by plaintiff, and that the trial court abused its discretion in not granting a new trial on account thereof. This contention is based on what defendant maintains is a change in his testimony from that given on the first trial of this case, in which trial the jury disagreed. The testimony of witness Preuss in this trial was that he watched the car driven by Joe Healy, the defendant's decedent, continually as it approached the intersection, and that except when it went behind a tree in the pasture it was never out of his sight. Upon cross-examination he was asked if in the first trial he did not state in the cross-examination as follows:

"Q. And from that time on you could see the car all the way? A. Up to the stop sign. Q. And then is when you took your eyes off from it and saw the truck coming? A. Just a second, yes. Q. I assume you looked back and saw the car again then? A. Yes, I glanced back. Q. And at that time the car was east of the stop sign, was it not? A. Yes."

When asked if he remembered those questions and answers, he stated: "I must have been confused at that time", and "I claim, in spite of my previous testimony, that I didn't take my eyes off the car any time after I first saw it." Witness Preuss maintained this position throughout vigorous cross-examination before the jury and again in the hearing held on the motion for a new trial before the court.

■■ In the first place there are grave doubts in our minds that the testimony of this witness was changed, but be that as it may, it is the testimony in the last trial that concerns us, especially when the alleged contradiction in testimony was called to the attention of the jury, as it was here. We have said that in the first instance there is a presumption that the witnesses are truthful. Windahl v. Hasselman, 198 Iowa 1001, 1005, 200 N.W. 583.

Also that the testimony of a witness is to be judged as a whole even if it is contradictory and conflicting, and that it is for the jury to pass upon under proper instructions from the court. In reality, the question here becomes one of impeachment. It is, therefore, the jury's duty to say whether the testimony has been successfully impeached or not. McVay v. Carpe, 238 Iowa 1131, 1140, 29 N.W.2d 582; Mohn v. Mohn, 181 Iowa 119, 164 N.W. 341; Daggy v. Miller, 180 Iowa 1146, 162 N.W. 854; Holden v. Hanner, 231 Iowa 468, 1 N.W.2d 671; Thompson v. Butler, 223 Iowa 1085, 274 N.W. 110; IX Wigmore on Evidence, Third Ed., sections 2588–2595.

We passed on such a situation in the case of Hess v. Dicks, 192 Iowa 378, at 382, 184 N.W. 742, at 744, where we said: "Then follow questions on cross-examination as to testimony given by Dicks at the former trial, which we understand appellant to claim was somewhat at variance, at some points, with his testimony on the last trial. But we have held that the testimony on the last trial was the testimony, and the other simply impeaching. The weight of his testimony, notwithstanding the alleged impeachment, was for the jury. State v. Carpenter, 124 Iowa 5, 11."

■ Here, also, the plaintiff's witness attempted to explain the alleged contradictions, and the trial jury evidently accepted it as sufficient. The defendant presents this matter as if these contradictions, if such they were, were substantive proof of the facts in the case. Manifestly this is not true, as they were admitted solely for impeaching purposes, and it was for the jury to say what weight should be given them. It did so. The credibility of the witness Preuss was for the jury to determine, and we note there was no complaint by defendant as to the instructions of the court, and none was offered by him. We assume, then, they were clear and correct, and the jury fairly considered all of this evidence. State v. Banks, 227 Iowa 1208, 290 N.W. 534. In the case of Hartman v. Red Ball Transportation Co., 211 Iowa 64, 69, 233 N.W. 23, 25, we said:

"Some of the witnesses on both sides modified and materially changed the testimony given upon the trial below from that given before the coroner's inquest. This regrettable fact does not pre-

sent a question of law for the court, but a question of fact for the jury, which must determine the credibility of the witnesses."

It is true, however, that the court may in its discretion allow a new trial where the prevailing party perjured himself or knowingly used perjured testimony, but this case does not come within that rule. Weinhart v. Smith, 211 Iowa 242, 233 N.W. 26. The case before us is not one involving newly discovered evidence of false testimony. Both the court and the jury considered this testimony, and we find no error and no abuse of discretion in not granting a new trial. Indeed it would have been error to have done so under the circumstances.

II. The other assigned error involving a witness's credibility also relates to the weight to be given the testimony by the jury. Defendant complains of the court's ruling on a question asked in cross-examination of plaintiff's witness John Mahnke, a highway patrolman, alleging undue restriction to defendant's prejudice. Following Mahnke's testimony that he could see vehicles approaching the intersection from both the south and the west from a spot witness Preuss claimed he saw the accident, he was asked the question "It isn't part of the duties of your job to help attorneys prepare cases for civil trial, is it?" Whereupon plaintiff objected by stating "If it please the court, we object on the grounds it's very improper * * *", and the court sustained the objection. Defendant cites several cases in support of his contention that the objection was not proper nor specific and should have been overruled. We have carefully examined these authorities and do not find them applicable here, for they relate to objections overruled, not sustained. They enunciate the correct rule that specific objections cannot be urged under the general objection that evidence is "incompetent, irrelevant and immaterial." The objection must in some way call the court's attention to the ground of objection. Coad v. Schaap, 144 Iowa 240, 243, 122 N.W. 900. In general the object of judicial investigation is to discover and elicit truth. Whatever is pertinent to the direct examination and furnishes the means of determining the knowledge, the honesty, the intelligence or bias of the witness, should always be laid before the jury. McKivitt v. Cone, 30 Iowa 455.

■ It is also true that while an objection must be specific when overruled, there is a difference when the objection complained of is sustained. In the latter case, if the question is objectionable on any ground, the sustaining of it is not error, even though not specific. Miller v. Davis, 193 Iowa 611, 187 N.W. 433; Baker v. Mathew, 137 Iowa 410, 115 N.W. 15; Christenson v. Peterson, 163 Iowa 708, 144 N.W. 315.

We said in Kent State Savings Bank v. Campbell, 208 Iowa 341, 344, 223 N.W. 403, 404: "But where the ruling complained of is a correct one, we sustain it, regardless of whether the * * * objection that induced it was adequate or inadequate. * * * The reason underlying such a rule is quite apparent on its face. If we were to reverse this case for want of proper objections to evidence otherwise inadmissible, we could only award a new trial. It should fairly be presumed that, upon the new trial, the proper objections would be interposed. Therefore, to grant a new trial upon such a ground would be a futile procedure."

■ It is clear, then, there is no merit here to defendant's contention that the proper specific objection was not made and that the court erred in sustaining it on that ground. Did the court abuse its discretion in sustaining an objection to the question on any ground? We have often held that the permissible range of cross-examination of a witness for the purpose of affecting his credibility, and that was the purpose of this question, in general rests in the sound discretion of the trial court. State v. Johnson, 215 Iowa 483, 245 N.W. 728; Jones v. Spencer, 188 Iowa 94, 175 N.W. 855; State v. Kendall, 200 Iowa 483, 203 N.W. 806; State v. Burris, 198 Iowa 1156, 198 N.W. 82. The correct rule is found, we think, in 40 Cyc. 2570:

"The extent to which a party or witness may be cross-examined for the purpose of affecting his credibility rests in the sound discretion of the trial court, whose action will not be revised on appeal unless an abuse of such discretion is made to appear." Also see 32 C. J. S., Evidence, section 548, page 341.

■ Here, then, the apparent effort to discredit the testimony of the patrolman by the assumption of a fact not proven, namely, that he was helping attorneys in civil suits prepare these cases, could well have been stricken by the court itself. In 58 Am. Jur., Witnesses, section 626, page 347, we find this statement:

"While it is doubtless proper to cross-examine a witness to dispel a favorable inference which the jury might draw from the mere appearance or conduct of a witness on the witness stand, such cross-examination must be confined to a fair and legitimate field of inquiry, and is subject to the general rules governing the scope and extent of cross-examination upon collateral matters affecting credibility which were not covered or opened up on direct examination."

■ It is, we think, highly improper to attempt impeachment of a witness by insinuations or slurs, or indirection, but such impeachment should be accomplished, if at all, in a manner provided by law. Keeney v. De La Gardee, 212 Iowa 45, 235 N.W. 745. While we feel it would have been proper to show the witness was not testifying for the plaintiff, in an official capacity, we are convinced that the court did not abuse its discretion in sustaining the question in the form presented. Regardless of this holding, we believe it could not be prejudicial error, for the so-called rebuttal testimony of Mahnke merely corroborated the testimony of witness Preuss, and the photographs in evidence as exhibits, that there was a clear view of approaching vehicles from the south and west toward the road intersection from the point witness Preuss claimed he observed when the accident occurred.

■■ III. Perhaps the major contention of defendant is that the verdict was excessive, so excessive as to show that the jury acted in passion and prejudice, and that a new trial should have been granted. The record discloses plaintiff's decedent was 30 years of age, with a normal life expectancy of 37.74 years. While the record is silent as to past accumulations of property, his wife testified: "He was a hard worker on the job and he worked hard trying to save * * *." Decedent was steadily employed earning about $75 per week, with a very good chance for advancement to the position of foreman at $100 per week. The undisputed testimony showed he was a man of good habits, good health, was strong, and a hard worker. He had been a truck driver for some period of time, and formerly was in the Army. He planned to go farming when his savings would enable him to

do so. He was a conscientious employee, was careful, and seemed industrious.

The proper measure of damages in cases of this kind, we have held, is the present worth or value of that which the decedent would reasonably be expected to save and accumulate if he had lived out the natural term of his life, and that in determining that amount it was proper to consider his age, health, education, life expectancy, reasonable probability of his ability to earn in the future, as well as the nature of his work. We have also held this determination is for the jury, and only in cases where it clearly appears that passion and prejudice prompted the verdict, or where it is apparent that the jury has disregarded the evidence or misunderstood the law as given to them in the instructions, will it be disturbed. Dunham v. Des Moines Ry. Co., 240 Iowa 421, 35 N.W.2d 578; Booth v. General Mills, Inc., 243 Iowa 206, 49 N.W.2d 561; DeToskey v. Ruan Transport Corp., 241 Iowa 45, 40 N.W.2d 4, 17 A. L. R.2d 826. We have carefully examined the cases cited by counsel, but comparison of verdicts is not a satisfactory method of determining the reasonableness of an award in a particular case. Each case must be determined by its pertinent facts disclosed by competent evidence. Dunham v. Des Moines Ry. Co., supra. We have further held that it is proper, in reviewing substantial awards, to consider the relative purchasing power of the dollar, and that with a fluctuating dollar value the difficulty is increased in determining the proper ultimate estate to be left. Dunham v. Des Moines Ry. Co., supra; Canfield v. Chicago, R. I. & P. Ry. Co., 142 Iowa 658, 121 N.W. 186; Dedman v. Mc-Kinley, 238 Iowa 886, 29 N.W.2d 337. We have carefully searched the record and find nothing therein to indicate the verdict is the result of passion or prejudice except its size. There were no objections filed as to the instructions nor any reason to believe they were not fair or clearly understood. We cannot assume that the jury disregarded them by the awarded amount alone, although we might apply a further test also recognized by this court, that a verdict may be set aside for excessiveness or inadequacy if found to shock the conscience. We make no such finding here, but on the contrary are content

to accept the jury's determination of the proper damages. There appears in a case recently decided by this court an excellent discussion on our duty in such matters. In Elings v. Ted Mc-Grevey, Inc., 243 Iowa 815, 821, 822, 53 N.W.2d 882, 886, this court speaking through Justice Bliss states:

"The fact that we as jurors might have found that a lesser amount would have been fairly compensatory is beside the point. It was the province of the jury in its sound discretion to determine the amount of the verdict * * *."

While the trial court may independently exercise the power of reducing or setting aside a verdict, or granting a new trial, when it is convinced that a verdict does not effect justice or that a jury has not done its duty, we find no basis for the application of that rule in the case before us. The trial court did not find reason to exercise this power, and we also find no evidence that the amount of the verdict was the result of passion, prejudice, or other improper factor. It is not unreasonable to find that the decedent, had he lived, could have saved a sum sufficient to justify the verdict of $20,000. We find no error, and the judgment is—Affirmed.

HAYS, C. J., and BLISS, OLIVER, GARFIELD, WENNERSTRUM, and MULRONEY, JJ., concur.

THOMPSON and SMITH, JJ., specially concur.

THOMPSON, J. (specially concurring)—I concur in the foregoing opinion in all respects except that I would hold the amount of the verdict is excessive and we should give the plaintiff-appellee the option of filing a remittitur in a substantial amount, or taking a reversal.

SMITH, J., joins in this special concurrence.